Ex Parte Redmond.

(Division A. Jan. 27, 1930.)

[125 So. 833. No. 28044.]

Hughes, Nobles & Lane, May, Sanders, McLaurin & Byrd and R. H. & J. H. Thompson, all of Jackson, for appellant.

**J. H. Cook**, of Clarksdale, for appellant.

Powell, Harper & Jiggitts, of Jackson, for appellant.

Chas. M. Bryan, of Memphis, Tenn., for appellant.

444

**Price & Price,** of Magnolia, for appellant.

P. H. Eager, Jr., and Chalmers Potter, both of Jackson representing disbarment proceedings.

Argued orally by **W. H. Hughes, Chas. M. Bryan,** and **J. H. Thompson,** for appellant, and by **P. H. Eager, Jr.,** for appellee.

**Smith, C. J.,** delivered the opinion of the court.

The appellant is an attorney at law, and this appeal is from a decree disbarring him from the practice of law. An order was entered in the court below reciting that "whereas S. D. Redmond, . . . members of this Bar, are unfit persons to practice in the Courts of Mississippi, and have forfeited their rights so to do. Therefore, be it ordered, adjudged and decreed that Messrs. P. H. Eager, Jr., and Chalmers Potter, be and they are hereby directed, authorized and empowered to investigate the charges against the above named parties, and to take such actions in the premises as in their opinion the facts justify after a full, fair and impartial investigation thereof." Afterwards this committee filed specifications charging the appellant with conduct for which they prayed that he be disbarred.

Four of these specifications only were pressed and considered in the court below, and will be hereafter set out and numbered 1 to 4, inclusive.

The decree rendered recites that "the said S. D. Redmond is guilty of malpractice and misbehavior and has wilfully violated his duties as an attorney at law, and is an improper and unsuitable person to practice law before the courts of this state, it is now, therefore, hereby ordered, adjudged and decreed that the said S. D. Redmond" be stricken from the roll of attorneys.

One of the appellant's contentions is that this decree should have designated on which of the specifications he was convicted, but the conclusion at which we have

arrived, renders is unnecessary for us to express any opinion thereon.

It appears from the record that the appellant had been disbarred several years previously, but had been thereafter reinstated. There was considerable evidence by witnesses prominent in legal and business circles to the effect that appellant was a man of good character and also some evidence to the contrary. The evidence of the previous disbarment of the appellant was admitted over his objection, but it will not be necessary for us to express an opinion thereon.

First specification: The appellant represented the executrix of the estate of Ollie L. Coleman, deceased, in the administration of the estate of the deceased, and, when the executrix's final account was approved, the court allowed the appellant a fee of two hundred and seventy-five dollars for services rendered by him in the administration proceedings. According to the specification, appellant falsely represented to the administratrix that the court had allowed him a fee of one thousand dollars, and attempted to collect that amount from her. The evidence bearing on this specification is, in substance, as follows:

The final account of the executrix was presented to the court while sitting in the office of the chancery clerk. While the account was being considered by the chancellor, the executrix, accompanied by her daughter, was either in the office about twenty-five or thirty feet from the chancellor's desk, or in another room which constituted a part of the office, the door between which was open, and about the same distance from where the chancellor was sitting. The appellant had requested several prominent members of the bar to testify what, in their judgment, would be a reasonable fee for the services rendered by him in the administration proceedings, and according to their statements to him, five thousand dollars or more was reasonable therefor. The estate was valued at proximately seventy-five thousand dollars; the

property composing it being situated in Mississippi, Illinois, and Louisiana. The chancellor advised the appellant that the evidence of these attorneys was unnecessary and that he would allow him a fee only for the services rendered in the administration proper in Mississippi, which he would fix at two hundred and seventy-five dollars. The appellant then asked the chancellor if he would not allow him a fee for all of his services if the executrix would agree thereto. This the chancellor refused to do, but told him, the reason for which does not appear, to ascertain from the executrix what she would be willing to pay for all the services rendered by the appellant. He was about to call the executrix so that she might give this information to the chancellor, but was told by the chancellor to ask her and report to him. The appellant then crossed the room to where the executrix was, and, according to his testimony, told her the chancellor had allowed him a fee of two hundred and seventy-five dollars in the administration, but wanted to know what she would be willing to pay for all of his services, whereupon she told him that she did not know what she ought to pay, and, upon his offer to accept one thousand dollars in full therefor, she agreed thereto. This agreement was reported to the chancellor who again stated that he would allow a fee only for the services rendered in the administration in Mississippi, which he fixed at two hundred and seventy-five dollars. The appellant then asked the chancellor if he would not recite in the decree that the fee was allowed only for services in this administration, to which the chancellor assented, and the decree was rendered accordingly.

According to the evidence of the executrix, in which she was corroborated by her daughter, she was told by the appellant that the chancellor had allowed him a fee of one thousand dollars, on the faith of which statement she agreed to pay him this sum. A number of witnesses were in the office at the time of this transaction, and the conversation between both the appellant

and the chancellor and between the executrix and the appellant was conducted in an ordinary conversational tone which could have been heard by the others in the office, including the chancellor, had they paid any attention thereto. According to the executrix, she did not discover that the chancellor had allowed a fee of only two hundred and seventy-five dollars until she read the decree some time thereafter. After reading the decree, she declined to pay more than two hundred and seventy-five dollars, and offered the appellant that amount in full for his services, which he declined to accept.

The appellant was corroborated as to his version of his conversation with the executrix by another witness, whose reputation for truth and veracity was impeached.

The testimony of the executrix discloses that she is of a highly nervous temperament, and that she was very much wrought up and had considerable feeling against the appellant. Upon cross-examination, the executrix was asked what services the appellant had rendered her, and she replied that he had done nothing but probate the will. Further cross-examination disclosed that she knew that this was not true; and it is manifest from the evidence that the appellant rendered her services other than those which were strictly a part of the administration proceeding, and for which, to say the least, a fee of one thousand dollars for all of the services rendered by him, including the administration proceeding, would not have been excessive. There was also evidence of statements made by the executrix to her daughter and others indicating that Redmond's version of the conversation about the fee was correct. Over the objection of the appellant, evidence was introduced to the effect that the appellant sued the executrix for the services rendered by him to her, the disposition of which suit does not clearly appear, though the inferences from the evidence are to the effect that it had been dismissed.

The evidence bearing on this specification being in conflict, the question for our decision is: Was the finding of the court below thereon manifestly wrong?

A disbarment proceeding is not strictly either a civil or criminal proceeding, but is akin to both. In form it is civil, but in substance it is criminal; for, though disbarment is for the protection of the courts, the legal profession, and the public, its effect on an attorney disbarred is the same as if his disbarment were a punishment for wrongdoing, and the rule, even in ordinary civil cases where the defendant is charged with fraudulent conduct, is that his guilt must be proved by clear and convincing evidence. McCain v. Cochran, 153 Miss. 237, 120 So. 823. This rule applies with equal force here. 6 C. J. 607.

The appellant must be presumed to be innocent of the misconduct with which he is charged, and the probabilities here all support this presumption. What occurred was practially in the presence of the chancellor—certainly in his hearing, had he attended thereto. The fee allowed the appellant was entered on the record, and he could not have hoped to conceal the falsity of the statement with which he is charged relative thereto in the event its truth should ever thereafter be called in question. The executrix and her daughter could have easily misunderstood him; and the executrix, when testifying, did not at all times confine herself to the truth. The evidence therefore is of too doubtful a character to justify the disbarment of an attorney. To hold otherwise would jeopardize the standing of even the most eminent members of the bar, and would subject them to the fear always of disbarment because of differences between them and their clients as to matters occurring in the course of that relation.

Second specification: The appellant was of counsel in a criminal proceeding pending in the Federal court, at Jackson, Miss. He filed a motion to quash the indictment, and had witnesses in support thereof sub-

poenaed to appear at a term of court to be held in Meridian, Miss. A motion was there filed by counsel for these witnesses to quash the subpoenas, whereupon the appellant advised the court that the district attorney had agreed that the motion might be heard and disposed of at Meridian. This the district attorney denied. The court declined to inquire into the matter, for the reason that its rule was not to enforce disputed verbal agreements of counsel. The evidence relating to the agreement which the appellant claims to have made with the district attorney is that the appellant called the district attorney over the telephone about the matter, and, according to his evidence, understood the district attorney to agree to the hearing of the motion at Meridian, provided it was agreeable to the judge of the court. The judge, when approached by the appellant, stated that he would hear the motion at Meridian if the district attorney would agree thereto. The district attorney testified that he made no agreement with the appellant for the hearing of a motion at Meridian, and was not cross-examined relative thereto; and, according to the testimony of the district attorney's stenographer, who answered the telephone call, turned the receiver over to the district attorney, and heard his end of the conversation, the district attorney said: "I can make no agreement; that is with the Judge. We are ready when anybody wants to try the case; it is with the Judge to say whether he will hear it or not. I can make no agreement." From this it seems clear that the appellant could easily have understood that it was agreeable to the district attorney to hear the motion at Meridian in the event the judge decided so to do. To say the least, the doubt which must necessarily arise relative thereto is of such character that it should be solved in his favor.

Third specification: In the course of the trial of a case in the Federal court in which the appellant was of counsel, it became necessary for the court to determine

whether he had a contract with his client for a contingent fee, and the appellant was offered as a witness by opposing counsel. His testimony, in substance, was that he had made no contract himself personally for a contingent fee, had not seen any such contract, and therefore could not testify of his own knowledge of the existence thereof. His examination discloses considerable fencing by both himself and examining counsel, but the testimony was in effect as here stated. The fact was that a written contract for a contingent fee had been made, but by another attorney, who was appellant's son and partner. What the appellant said, according to the evidence, was literally true, and he was not called on to volunteer the information, if competent, that he had been informed, if such was the fact, that a contract for a contingent fee had been made.

Fourth specification: This specification in effect is that, five years before this proceeding was begun, and at a time when so to do was not a criminal offense, the appellant offered to procure the appointment of another to the office of marshal for one of the Federal judicial districts of the state. The evidence relating to this specification is in conflict. That in support thereof is, in substance, as follows: The member for Mississippi of the National Committee of the Republican Party promised the appellant that he would consult him with reference to appointments to be made to Federal offices in Mississippi, and the appellant offered to procure the appointment of another to the office of marshal for one of the Federal judicial districts of Mississippi for a compensation. The National Committeeman was a special assistant to the attorney-general of the United States, but what connection he had, if any, with the appointments to federal offices, does not appear.

Section 223, Code 1906 (Hemingway's 1927 Code, section 202), provides that "if any attorney or counselor at law be in default of record, or otherwise guilty of any

deceit, malpractice or misbehavior, or shall wilfully violate his duties, he shall be stricken from the roll and disbarred, and his license revoked by any court in which he may practice; and such person shall never afterward be permitted to act as an attorney or counselor in any court in this state.''

It may be that the conduct set forth in this statute should be construed to be such only as relates to an attorney's professional conduct, but it will not be necessary for us to so decide, and we express no opinion thereon. The only conduct there set forth under which this specification could be brought is that designated as ''misbehavior.'' That is a word of broad meaning, but, under familiar rules of construction, its meaning must be restricted to the accomplishment of the purpose for which the statute was intended. Assuming then, for the purpose of argument, that the word includes misbehavior other than such as relates to an attorney's professional duties, it is clear from its context and the purpose sought to be accomplished by the statute that it refers only to such misbehavior as demonstrates an attorney's unfitness for the confidence and trust which attend the relation of attorney and client and the practice of law before the courts. This is as far as any of the courts have gone in disbarring attorneys for conduct other than such as constitutes a breach of their official duties. 6 C. J. 583.

A contract to obtain the appointment of another to a public office is void on the ground of public policy, and the execution of such a contract is, of course, reprehensible, but does it of itself alone demonstrate the unfitness of an attorney for the practice of his profession? This question must be answered in the negative. In his nonprofessional relations, an attorney is held to no higher standard of morals or ethics than are men of other trades, callings, and professions (6 C. J. 600), and it would be going very far to say that a man renders himself unworthy of trust in the ordinary relations of

life merely because he offers to procure the appointment of another to a public office for a compensation. Had the evidence disclosed that the appellant offered to procure the appointment by corrupt methods, a different question might be presented.

The decree of the court below will be reversed, and the cause will be dismissed.

Reversed and dismissed.