397 So.2d 878 (1981)
R.L. NETTERVILLE
v.
MISSISSIPPI STATE BAR et al.
No. 62.
Supreme Court of Mississippi.
March 18, 1981.
*879 R.L. Netterville, Natchez, pro se.
Jimmy L. Miller, Jackson, for appellees.
Before SMITH, P.J., and SUGG and LEE, JJ.
SMITH, Presiding Justice, for the Court:
This is an appeal by a member of the Mississippi State Bar from a private reprimand ordered by the Mississippi State Bar through its Complaints Committee.
Mississippi State Bar, its officers, commissioners and its Complaints Committee are named as appellees. The opening statement in the brief filed on behalf of the appellees is as follows:
The proceedings were conducted under 1974 General Laws of Mississippi, Chapter 566, which has been codified as Sections 73-3-301 et seq., Mississippi Code of 1972, (1979) Supp., called hereafter Code. Sections 73-3-309, through 73-3-319, Code, specify how complaints shall be received and filed, investigations begun, hearings conducted, reports submitted by Complaint Counsel, and dispositions made by the Committee on Complaints, called hereafter the Committee. The procedures specified by those sections were followed except in those instances where a policy of the Committee was utilized in conjunction with the statutory scheme.
Appellant, an attorney actively engaged in the practice of law, representing a widow and four minor children, brought suit against Hutchinson Manufacturing, Inc., upon a products liability claim, wherein it was alleged that the defendant had designed, manufactured and marketed a defective grain auger which was hazardous and dangerous to its users and that the widow's husband and father of the minor children had been killed as the result of using the defective auger.
The owners of all of the stock in Hutchinson Manufacturing transferred all of its assets to Royal Industries, Inc., a California corporation, in exchange for stock in Royal Industries, Inc. It seems to have been the contention of Royal Industries, Inc., through its attorneys, although it appears to have operated a "Hutchinson" division, that liability, if any, lay exclusively with Hutchinson Manufacturing, Inc. and that *880 Royal Industries, Inc. in nowise became responsible or liable to plaintiffs since the auger had been designed, manufactured and placed on the market prior to the acquisition of the assets of Hutchinson Manufacturing by Royal Industries, Inc. It is asserted that the latter would not produce or make available any of the records of Hutchinson Manufacturing. This position adopted by Royal Industries, Inc. was disclosed in discovery proceedings by Leon B. Mugler, formerly secretary-treasurer of Hutchinson Manufacturing, Inc. acting for Royal Industries, Inc. Appellant, who was plaintiff's attorney in the products liability suit, was unable to obtain information as to the nature and status of the merger with, or of the acquisition by, Royal Industries, Inc. of the former Hutchinson Manufacturing, Inc.
Appellant, as attorney for plaintiffs in the products liability suit, appears to have prevailed upon attorneys for Royal Industries, Inc. to provide him with the names and addresses of the stockholders of Hutchinson Manufacturing, Inc. This information was given to appellant over the telephone by Stuart Handy, an attorney for Royal Industries, Inc., and consisted of the names and addresses of one Leon B. Mugler and Gary N. Griffiths, together with their phone numbers.
On that same day, appellant telephoned Mugler at the number given, and asked to speak to him. Informed that Mr. Mugler was not in, petitioner asked to speak to Mr. Griffiths. The ensuing conversation with Mr. Griffiths gave rise to the complaint against appellant. A copy of the complaint is attached as Appendix A.
Appellant asserts that the purpose of the phone call was to obtain names, addresses and also the address of Dr. Carl Ruff, a former Hutchinson officer, in order to arrange a date for taking their depositions and so that they might be served with process, including a subpoena duces tecum requiring production of the records of Hutchinson Manufacturing, Inc. The transcription of the entire telephone conversation is attached as part of the complaint and is made a part of this opinion as Appendix B.
Following this incident, Royal Industries, Inc. attorney Charles Stoll, of California, filed the complaint against appellant.
Mississippi Code Annotated section 73-3-313 (Supp. 1980) provides for an investigation of such complaints by complaint counsel. This section provides that an accused attorney shall be notified that he is under investigation, with a statement of the general nature of the charges and be furnished with a copy of the complaint "and any evidence supporting it." That section also states that complaints counsel shall "afford the accused attorney a hearing." Section 73-3-315(b) provides in part: "The accused attorney has no right to be present at any stage of the investigatory hearing, either in person or by counsel." He shall have an opportunity to make a statement, verbally or in writing, offering matter refuting or admitting the alleged misconduct. He may document the statement to include affidavits but "shall not have the right to present other testimony or evidence and shall have no right to confrontation." Section (c) of the same section states in part that: "[A] full evidentiary hearing on the merits is not contemplated."
Section 73-3-317 provides that complaint counsel "will cause the testimony of any witnesses at an investigatory hearing to be taken and transcribed and shall certify the same to the committee on complaints, along with his written findings." Apparently the reference to "any witnesses" does not refer to witnesses on behalf of the accused attorney as apparently (under Section 73-3-313) he has no right to present any.
Section 73-3-319(b) provides: If upon review of the record, complaint counsel's report and any written response by the accused attorney, the committee determines that "there is reasonable ground to believe" that the accused attorney has been guilty of unprofessional conduct evincing unfitness for the practice of law and is of the further opinion that a public or private reprimand will be sufficient punishment, it may provide for administering such a reprimand. This section concludes: "In any event, written *881 notice of the delivery of such reprimand shall be given to the person filing the complaint, the clerk of the court, the executive director of the Mississippi State Bar, and to the judges of the circuit and chancery court districts of the accused attorney."
It will be observed that a reprimand may be ordered administered if the committee finds that "there is reasonable ground to believe" that the accused attorney has been guilty of unprofessional conduct or conduct evincing unfitness for the practice of law. This determination may be made by the committee although the accused attorney "has no right to be present at any stage of the investigatory hearing, either in person or by counsel," has no right to produce witnesses of his own at such hearing, no right to confront or cross-examine the accuser or any witnesses whose testimony complaint counsel may include in his report.
The proceedings were conducted and concluded, and the Committee issued the following findings:
The Complaints Committee has considered very carefully the above captioned complaint and all other relevant materials available to it, including the report of Complaints Counsel.
Our investigation in this matter indicates that during the course of your investigation and preparation of the litigation in question, you contacted by telephone one of the prospective witnesses; that during the course of that conversation you discussed elements of the litigation with him and unknown to him recorded by tape or otherwise that conversation for your future use. Such action on your part clearly constitutes unprofessional conduct. See Penny v. Blush, 256 So.2d 590 (1978). (This citation should be 356 So.2d 590.) (Emphasis added.)
Pursuant to the above conclusions, the Committee ordered that a private reprimand be administered to appellant as provided by Section 73-3-319.
Feeling aggrieved at this action, appellant has appealed, assigning the following grounds for reversal:
(1) A complaint against an attorney is a criminal procedure and is penal in nature.
(2) There is no evidence in this record to support the fact that Netterville taped the conversation, and the committee misinterpreted the decision of this court in Penny v. Blush, 356 So.2d 590 (Miss. 1978).
(3) Netterville was denied due process by the Mississippi State Bar.
(4) Sections 73-3-315 and 73-3-319 of the Mississippi Code of 1972, Annotated, authorizing a letter of reprimand of an accused attorney without the elements of due process of law, such as notice, hearing, to be tried before an impartial tribunal, confrontation, and cross-examination, denies the accused due process of law.
(5) Sections 73-3-315 and 73-3-319 of the Mississippi Code of 1972, Annotated, are unconstitutional and void. They deny substantive and procedural due process of law and violate the Constitutions of the United States of America and the State of Mississippi and are void.
Appellant's second contention (that there was no evidence in the record capable of supporting a finding that the telephone conversation was taped and that the committee misinterpreted Penny v. Blush, supra, will be considered first.
It is pointed out that the only reference in evidence as to how the telephone conversation between Netterville and Griffiths was taken down and transcribed appears in his own statement. It is suggested that it must have been obvious to Griffiths that the request for names and addresses necessarily carried with it an implication that the data supplied would be taken down in some manner to serve as an aide memoire. Appellant stated that he had no recollection as to how the conversation was taken down although he did recall that he made notes on a "yellow pad," that his secretary was also on the phone, and that she took the conversation in shorthand and later transcribed it. This was common practice. Appellant was unable to recall, whether the conversation also had been taped or not. Appellant stated that his practice was to tape only statements from witnesses, where permission was obtained. In the present *882 case, appellant asserts that the conversation dealt only with data for setting up depositions. On the basis of the above, the Committee found that appellant had violated the rule announced in Penny v. Blush by recording a conversation with an adverse party on tape or otherwise for future use without informing the adverse party.
In Mississippi State Bar v. Phillips, 385 So.2d 943 (Miss. 1980), the Court said that:
[T]he rule applicable to administrative agencies to the effect their orders must be affirmed unless (1) they are arbitrary and capricious and (2) are not supported by substantial evidence, and the rule that, as in chancery court, the chancellor will not be reversed on the facts, unless he is manifestly wrong, do not apply [...] to the question here. We hold that, on appeal, this Court reviews the evidence, the law, the findings and conclusions of the Complaint Tribunal, and then renders such order as the Court may find to be appropriate, based upon the entire record. [385 So.2d at 945].
The Committee cites American Bar Formal Opinion 337 (1974) referred to in J.C. Penny v. Blush, supra. In Opinion 337 it is stated:
Formal Opinion 150, issued in 1936, held that a prosecuting attorney could not ethically use a recording of conversation between defense attorney and his client in evidence in the prosecution of the defendant even though such recording was legally admissible at the time of the opinion. The Committee based its holding in part on the duty of attorneys in public employ to avoid the appearance of impropriety. The opinion also stresses the nature of the intercepted conversation (between the accused and his counsel) as to which the attorney and client were entitled to confidentiality.
[Emphasis added].
The opinion continues and seems to stress the undesirability of using an electronic recording device to record secretly a telephone conversation. In the present case the Committee concedes that where a caller requests data or information, the person called reasonably should expect that the caller will take down the data or information in some manner, so as to have a memorandum of it.
Formal Opinion 337, which is quite lengthy, in its next to the last paragraph, states:
The conduct proscribed in DR 1-102(A)(4), i.e., conduct which involves dishonesty, fraud, deceit or misrepresentation in the view of the Committee clearly encompasses the making of recordings without the consent of all parties. With the exception noted in the last paragraph, the Committee concludes that no lawyer should record any conversation whether by tapes or other electronic device, without the consent or prior knowledge of all parties to the conversation.
The opinion concluded by stating that the mere fact that the secret recordation in a particular instance is not illegal does not necessarily render the conduct of a public law enforcement officer in making such a recording ethical.
It is to be noted that under section 73-3-319, it is not until the Committee has determined that it has "reasonable cause to believe the accused attorney is guilty of such conduct, which, if proven, would warrant suspension for a definite or indefinite period or permanent disbarment," that the Committee is required to file a formal complaint. Only then is there a provision for the appointment by this Court of a complaint tribunal, to hear and determine the matter. Thus it appears that where any punishment short of temporary or permanent disbarment is contemplated, the accused attorney is not allowed to confront the complaining witness, to be present or to present witnesses or to cross-examine.
Appellant responds to the Committee's contention that the conversation was "secretly" recorded, pointing out that the Committee itself states: "It is, as appellant argues, obvious that any reasonable man would assume that a person who calls for information would take down that information in some fashion." The Committee pursued the subject stating: "It is also equally *883 obvious that appellant could not talk to Griffiths without Griffiths' knowing that he was talking to appellant. In this respect there is no secrecy involved, but contrary to what appellant implies, it is obvious from the record that Griffiths did not know the secretary was on the line and, as submitted above, that is the point at which appellant crossed the line into unprofessional conduct." [Emphasis added].
The question in Penny v. Blush, cited by the Committee in its decision, was fundamentally different from that presented here. The Committee, in its brief, acknowledges that Penny v. Blush, supra, involved a challenge to the propriety of an attorney taping a telephone conversation without informing the person called that he was doing so, and then, in a case where he was appearing as an attorney, as well as testifying as a witness, to vouch for the truth of his own testimony, and as attorney arguing to the jury that his own testimony as a witness with respect to the contents of the tape was true. It involved the dual role of an attorney who was actively engaged in representing one of the parties at trial using his testimony as to the other party's statements on tape in his argument to the jury for the purpose of bolstering his own credibility.
In Mississippi State Bar v. Attorney-Respondent, Etc., 367 So.2d 179 (Miss. 1979) this Court said in discussing In Re Ruffalo, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968):
Similarly in In Re Ruffalo, where the United States Supreme Court classified disciplinary proceedings as quasi-criminal, there was no intent to equate them with criminal trials for all purposes. In Re Ruffalo was a due process case and the Court simply reiterated what it had held on previous occasions; that in any proceeding where there is the possibility of deprivation of property or liberty, due process demands notice, and the opportunity to be heard.
Thus, neither Spevack [v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967)] nor In Re Ruffalo held that a disciplinary hearing is the equivalent of a criminal trial. Both, however, recognized that due to the severity of possible punishment due process demands that the proceedings be conducted with regard to the attorney's rights of notice and opportunity to be heard.
[367 So.2d at 185].
Following the rule laid down in Mississippi State Bar v. Phillips, supra, we have reviewed the evidence, the law, the findings and conclusions of the Committee and have concluded that appellant was guilty of no dishonesty, fraud, deceit or misrepresentation in connection with the telephone conversation, when considered within the context of the circumstances then existing, that the evidence failed to establish with the degree of credibility required, that the conversation was taped, and it is conceded that the information requested was of such a nature as reasonably to import to the person called the probability, if not certainty, that it would be taken down in some manner for future use.
We find that the conduct attributed to appellant, as reflected by the record, did not amount to professional misconduct and that it was error to order that he be reprimanded.
The proceedings in this case, although conducted according to the letter of the statute, convince us that the statutory procedure does not provide due process to an accused member of the bar.
Under the statutory procedure outlined above, the complaint counsel prepares a report to the complaints committee. This tribunal ultimately will exonerate or find the accused attorney guilty of unethical conduct and order his punishment in cases where the punishment does not extend to suspension or disbarment. The report contemplated by the statute is to consist of the transcribed testimony of such witnesses as complaints counsel may see fit to interview, apparently in private, whether known or unknown to the accused attorney, without notice to him and in his absence, and to whom the transcribed testimony is not revealed. The accused attorney may not confront, *884 cross-examine or even know the identity of these witnesses. He is forbidden to present witnesses or other evidence of his own. The accused attorney's contribution to this report, upon the basis of which his professional conduct is to be judged, is limited by the statute to a statement, with supporting affidavits.
We think that a reprimand such as was ordered in this case, whether public or private, administered to an attorney, in formal proceedings, by the complaints committee of his state bar association, is neither trifling nor insignificant nor is it without material consequences to the attorney.
Where suspension or disbarment is not involved, on the basis of the report made up by complaints counsel as stated above, the complaints committee, if it has "cause to believe" that the accused attorney is guilty, shall find him guilty, and order his punishment, in this case, a private reprimand. We think that the requirements of due process, as well as traditional Anglo-American notions of fair play and substantial justice, are violated by this one-sided procedure. Fairness demands that an accused attorney be given the names and addresses of any witnesses whose testimony complaints counsel intends to take, together with a statement of the time and place where such testimony is to be taken, and be given the right to attend and cross-examine. The accused attorney must also have the right to take the testimony of witnesses of his own, in the same manner, their transcribed testimony also to become a part of the report.
It has been noted that the complaints committee, if it "has cause to believe" the accused attorney is guilty of the professional dereliction with which he is charged, based upon the report of complaints counsel, shall find him guilty and order his punishment. We have concluded that disciplinary proceedings such as those involved here, while said to be neither civil nor criminal, are of sufficient gravity to require a higher standard of evidence than that the complaints committee merely "have cause to believe" from the report that the accused attorney is guilty. A finding by the complaints committee, based upon a report to be made up as outlined above, that the guilt of the accused attorney has been established to its satisfaction by clear and convincing evidence, is necessary in order to meet the requirements of due process.
Based upon its inherent power in the area of the disciplining of members of the legal profession, it is the order of this Court that, in future proceedings under sections 73-3-301 et seq., in order to meet the requirements of due process and of traditional Anglo-American notions of fair play and substantial justice, the investigatory hearing while not "a full evidentiary hearing" must be expanded to permit the accused attorney the privilege of offering transcripts of the testimony of witnesses and the right to cross-examine witnesses whose testimony is taken by complaints counsel, the transcripts in each instance to be included as parts of complaints counsel's report, with other material required by the statute.
Moreover, before any punishment may be ordered by the complaints committee, it must find from the report thus made up that there is clear and convincing evidence that the accused attorney is guilty of the professional dereliction with which he is charged.
REVERSED AND COMPLAINT DISMISSED.
PATTERSON, C.J., ROBERTSON, P.J., and SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.
HAWKINS, J., takes no part.

*885 APPENDIX A

 COMPLAINT
 I, Charles W. Stoll 
 (your name and complete address)
do hereby file with the Mississippi State Bar a complaint against __________
 Box 946
 Mr. Robert L. Netterville, Natchez Office Bldg., Natchez, MS 39120 
 (attorney's name and address)
 The facts of my complaint are: As set forth in my letter of May 11, 1979 
 addressed to the Mississippi State Bar, including attachments 
 thereto. 
____________________________________________________________________________
____________________________________________________________________________
____________________________________________________________________________
____________________________________________________________________________
____________________________________________________________________________
____________________________________________________________________________
____________________________________________________________________________
____________________________________________________________________________
____________________________________________________________________________
____________________________________________________________________________
____________________________________________________________________________
____________________________________________________________________________
 The facts in this complaint are true and correct to the best of my
 knowledge.
 /s/ C.W. Stoll 
 (your signature)
Witnessed: _________________________________________________________________
 (name) (address)
 _________________________________________________________________
 (name) (address)
 Sworn to and subscribed before me this the 21st day of
 May , 19 79 
 (Seal) /s/ Jeri Auge 
 Notary Public
 My commission expires April 27, 1982 
 [SEAL] [SEAL]

*886
 IRSFELD, IRSFELD & YOUNGER
 JAMES B. IRSFELD, JR. JOHN A. WEYL
 KENNETH C. YOUNGER ATTORNEYS AT LAW OF COUNSEL
 R. WENDELL BUTTREY
 ROBERT W. GARCIN 7060 HOLLYWOOD BOULEVARD
 JOHN H. BRINK
 CHARLES W. STOLL HOLLYWOOD, CALIFORNIA 90028
 PETER J. IRSFELD
 JAMES J. WALDORF TELEPHONE (213) 466-4161 JAMES B. IRSFELD
 WILLIAM A. FRANCIS (1880-1966)
 BERNARD KRENTZIN
 MICHAEL B. LUFTMAN
 C. PHILLIP JACKSON
 ROSS R. HART
 LARRY B. CLOSE
 DAVID R. BRADFORD May 11, 1979
 The Mississippi State Bar
 101 Realtors Building
 620 N. State Street
 Jackson, MS 39201

Attention: Chairman, Complaints Committee
Gentlemen:
I wish to call to your attention a recent incident involving Mr. Robert L. Netterville, a member of the Mississippi State Bar, who maintains his office at the Natchez Office Building, Natchez, Mississippi 39120.
By way of background, Mr. Netterville represents the plaintiff in an action presently pending the Circuit Court of Wilkinson County, Mississippi, entitled "Jacqueline Clark White, Et Al vs. Hutchinson Division, Royal Industries, Inc., et al", No. C. 4123, filed November 15, 1977. I am corporate counsel for Royal Industries, Inc., a Delaware corporation, and the Hutchinson Division of Royal Industries, Inc., which has no separate legal status. Subsequent to receipt of service of process, I employed the services of Mr. G. Stuart Handy of the firm of Handy, Fitzpatrick, Gwin, Blough & Lewis, Attorneys at Law, Post Office Box 1344, Natchez, Mississippi 39120, to represent and defend Royal's interest in connection with that pending litigation. Since the date of filing, extensive discovery has been undertaken by both plaintiff and defendant.
In April of 1979, it was brought to my attention that Mr. Netterville had telephoned the office of my client, the Hutchinson Division of Royal Industries, Inc., and had spoken directly to an officer and employee, Mr. Gary N. Griffiths, after not being able to reach the President of the Hutchinson Division, Mr. Leon B. Mugler. I immediately telephoned Mr. G. Stuart Handy and expressed my shock and amazement that opposing counsel would directly contact an officer of a party represented by legal counsel without prior approval for such contact. I then received a copy of a letter dated April 23, 1979 from Mr. Netterville which indeed confirmed that he had telephoned and, in fact, had apparently taped the conversation. I am attaching a copy of Mr. Netterville's letter of April 23, 1979, including the transcript attached thereto.
On May 4, 1979, I wrote to Mr. Handy, with a copy of that letter addressed to Mr. Netterville. I enclose a copy of that letter herewith.
I am now in receipt of a letter of May 8, 1979 from Mr. Netterville which states, in part, that if I filed a complaint against him with the Bar, he will file a lawsuit against me.
While I am certainly not versed on the canons of ethics nor the disciplinary rules of the State of Mississippi, I am aware that direct or indirect contact by an attorney with an adverse party represented by counsel is prohibited. The American Bar Association Disciplinary Rules state:
"DR 7-104 Communicating With One of Adverse Interest.

*887 (A) During the course of his representation of a client a lawyer shall not:
(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so."
The Disciplinary Rules for the California State Bar also state, under Rule 7-103:
"Communicating with an Adverse Party Represented by Counsel.
A member of the State Bar shall not communicate directly or indirectly with a party whom he knows to be represented by counsel upon a subject of controversy, without the express consent of such counsel. This rule shall not apply to communications with a public officer, board, committee or body."
If ethics or disciplinary rules of the State of Mississippi are to the contrary, then I will certainly be pleased to accept that advice from your Honorable Body. If, on the other hand, the conduct described above is prohibited by the Mississippi Bar, I will wish to file a formal complaint and would appreciate your advice.
 Very truly yours,
 IRSFELD, IRSFELD & YOUNGER
 /s/ C.W. Stoll
 Charles W. Stoll
cc: Stuart Handy, Esq.
 Robert L. Netterville, Esq.

APPENDIX B
APRIL 18, 1979
: Yes, this is Hutchinson Division.
RLN: Hello, is this Hutchinson Division?
Do you have a Mr. Leon B. Mugler there?
: Yes, but he is out of town, can I have him return your call tomorrow?
RLN: Ah ...
: Could possibly someone else help you?
RLN: Well do you have a Mr. Gary N. Griffiths?
: Yes, we do.
RLN: May I speak to him?
: May I ask who is calling?
RLN: Bob Netterville, in Natchez, Mississippi.
: Thank you.
GNG: Gary Griffiths, may I help you?
RLN: Mr. Griffiths?
GNG: A-huh.
RLN: Is this Mr. Griffiths?
GNG: Yes, sir.
RLN: Mr. Griffiths, this is Bob Netterville in Natchez, Mississippi. I am an attorney down here and we have some issues that are in a case that I am involved in that has brought up some of the corporate status of your old corporation, the Hutchison Manufacturing, Company, Inc. I believe you were a part of that, were you not?
GNG: Yes, sir.
RLN: Now, who all were the stockholders in that do you recall?
GNG: Well, I would suggest that you talk to Leon Mugler here in our office, he was one of the previous owners and he could probably fill you in on that.
RLN: Well, I have, according, I have all the records here on that that the other side has filed, and I have your name and Mr. Mugler's name, and Carl H. Ruff.
GNG: A-huh.
RLN: Do you know the whereabouts of Mr. Ruff?
GNG: He lives in Clay Center.
RLN: Do you have his address and phone number?
GNG: Do you want a residence or office?
RLN: Give me both.
GNG: Okay, the offices is:
 Carl H. Ruff
 1101 Fifth
 Clay Center, Kansas
 Phone: (913) 632-3777
RLN: Now come at me again.
GNG: (913) 632-3777
RLN: His address is what?
GNG: 1101 Fifth
*888 RLN: That's all, that's Clay Center. I see. Now, what is his residence?
GNG: 1600 Twelfth
Clay Center, Kansas Phone: (913) 632-3974
RLN: Now listen, I had gotten an impression back here, is he a doctor?
GNG: He is.
RLN: He is a doctor?
GNG: Yes, sir.
RLN: I see, and there were only three, according to your records here, there were only three stockholders in that corporation.
GNG: As far as I know.
RLN: And he was the president, Mr. Mugler was the Secretary, I am looking at some of the stuff here on the thing, and then, what kind of doctor is he, Carl H. Ruff, is he an M.D.?
GNG: Yes.
RLN: Is he a general practitioner?
GNG: Yes.
RLN: I see. Now look, would you know yourself, if I needed to depose you and Mr. Mugler, could you be available some time say the afternoon of the 3rd of July, 1979?
GNG: Well, that's out for the present time, but you know I can only speak for myself.
RLN: It won't take us 30 or 40 minutes.
GNG: As far as I know I am available on that date at this point. As of this date. But I can't speak for the other two gentlemen, or the other one.
RLN: Now, where do I write Mr. Mugler, there at the plant?
GNG: Yes.
RLN: Alright, well, you will be hearing from me, and I certainly appreciate this, sir, and that's, let me ask you this, who kept the records of your old company?
GNG: I really don't know. You know, I was basically an employee.
RLN: You were what?
GNG: I say I really don't know, I was an employee.
RLN: Were you a stockholder?
GNG: I had one share of stock.
RLN: Oh, I see. Now how about Mr. Mugler was he a substantial stockholder?
GNG: Since there were only three, yes, a-huh.
RLN: He was. See my information is that he and Dr. Ruff kind of put up the thing, Ruff put up the money, and Mugler must be an engineer, isn't he?
GNG: No, he is not.
RLN: He is not, he is just a smart cookie? Okay, well, I understand that he is the one that really designed the thing and got it going.
GNG: Well you can get ahold of him at our address here, at Clay Center.
RLN: Mr. Mugler?
GNG: Yes. Or you can talk to him on the phone now, if you wish.
RLN: Oh, is he there? I would appreciate it.
GNG: I would assume so.
RLN: See, I asked to speak to him, and they said he was out of town, and then I asked to speak to you.
GNG: Okay, he may have gone.
RLN: Okay, check if you will.
GNG: Let me check, I know he was going out of town, but I don't know if he left is gone. Just a second and I will put you on hold and find out if he is still here.
RLN: Yeh.
GNG: Hello. No he is not back yet. I mean he is not here now.
RLN: He is already gone?
GNG: Yeh, he was gone this afternoon, apparently he is already preparing to go this afternoon, apparently he is already gone.
RLN: When it is convenient with him would you have him to call me collect in Natchez, Mississippi, and tell him ...
GNG: Hold and let me get a piece of paper. Bob ...
RLN: Netterville.
GNG: Wait a minute, I am going to have to have a little time getting started with you. Bob ...
*889 RLN: Netterville.
GNG: A-huh.
RLN: In Natchez, Mississippi. Now, my phone number is area code 601, number 442-1666. Now, I will tell you what. Tell him to call me collect, and if I am not here they won't accept the call, but they will tell them when I will be back.
GNG: Are you representing the old Hutchinson Company in this suit?
RLN: No, I am not, I am representing the opposite side. I am representing a widow on a claim against the