436 So.2d 781 (1983)
Dempsey M. LEVI and Earl L. Denham, Appellants,
v.
MISSISSIPPI STATE BAR, Appellee.
Misc. No. 887.
Supreme Court of Mississippi.
July 20, 1983.
*782 John L. Hunter, Cumbest, Cumbest & Hunter, Pascagoula, Clyde O. Hurlbert, Biloxi, D. Knox White, Gulfport, for appellants.
Earl L. Denham, pro se.
Jimmy L. Miller, Jackson and Marks, Andrew J. Kilpatrick, Jr., Jackson, for appellee.
Before WALKER, P.J., and DAN M. LEE and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court.

I. Introduction

This case comes before us on the Complaint of the Mississippi State Bar that two attorneys, Dempsey M. Levi and Earl L. Denham, have been guilty of misconduct within the meaning and contemplation of certain Disciplinary Rules of the Mississippi Code of Professional Responsibility.
Exhaustive and exhausting proceedings were had before the Complaint Tribunal duly constituted as provided by law. Miss. Code Ann. §§ 73-3-323, -325, and -327. (Supp. 1982). A ten volume record has been produced, including numerous exhibits, all of which we have reviewed with care. The Complaint Tribunal found Levi and Denham guilty of misconduct. It imposed a one year suspension.
From that decision Levi and Denham have prosecuted this appeal. Under the rules applicable to cases such as this, we consider the matter de novo. Having done so, it is our opinion that the Mississippi State Bar has failed to prove its case. Accordingly, the Complaint is finally dismissed.

II. De Novo Review

The Complaint Tribunal in many ways has acted as a trial court sitting without a jury. It has issued detailed findings of fact and conclusions of law and has rendered what is in essence a final judgment.
In one decisive respect, however, we do not proceed here as we would in any other appeal from the final judgment of a trial court sitting without a jury. We are the triers of fact. As a matter of law, we are not bound by those limited scope-of-review rules applicable in appeals generally, rules whereby we are without power to disturb findings of fact if they are supported by substantial evidence.
This Court's charge is found in Section 73-3-329(5) (Supp. 1982) which reads:
On appeal, the Court may review all of the evidence and the law and the findings and conclusions of the complaint tribunal *783 and it may make such findings and conclusions and render such order as it may find to be appropriate based upon the whole record.
In its brief the State Bar concedes the point, stating:
This Court is the ultimate judge of the facts and the law in disciplinary cases... .
And further:
"The Bar also does not intend to controvert this Court's right, power and duty to review the entire matter and enter orders as the Court may deem appropriate".
See Mississippi State Bar v. Phillips, 385 So.2d 943, 945 (Miss. 1980).
All of this is wholly consistent with the well established proposition that lawyer disciplinary proceedings are with this Court's exclusive and inherent jurisdiction, notwithstanding the statutory format pursuant to which this matter has proceeded. See, Mississippi State Bar v. Phillips, 385 So.2d 943, 944 (Miss. 1980); Matter of Mississippi State Bar, 361 So.2d 503, 505 (Miss. 1978); Bramlett v. Burgin, 382 So.2d 284, 285 (Miss. 1979). Those inherent powers have been enhanced, not diminished, by the statutory scheme. Mississippi State Bar v. Phillips, 385 So.2d 943, 945 (Miss. 1980).
It may well be that the Complaint Tribunal obtained valuable insights by its personal observation of the appearance and demeanor of the witnesses. And, to be sure, in the exercise of our sound discretion we are by no means prohibited from giving to findings of fact made by the Tribunal such weight as in our judgment they may deserve. This we may do so long as we do not lose sight of the fact that, as a matter of law, it is our non-delegable duty and responsibility to make findings of fact in cases such as this.

III. Burden of Proof

Bar disciplinary proceedings are inescapably "adversary proceedings of a quasi-criminal nature". In Re Ruffalo, 390 U.S. 544, 551, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117, 122 (1968); see also Netterville v. Mississippi State Bar, 397 So.2d 878, 883 (Miss. 1981); and Ex Parte Redmond, 156 Miss. 439, 452, 125 So. 833, 835 (Miss. 1930). A standard of proof higher than the ordinary "beyond a preponderance of the evidence" standard is thus appropriate.
Beyond that, we are confronted in this case with charges of fraud and other equivalent forms of misconduct. In civil litigation generally, it is settled in our law that, before a plaintiff may prevail on a charge of fraud, he must prove his case by clear and convincing evidence. See, e.g., Mosby v. Gandy, 375 So.2d 1024, 1028 (Miss. 1979); Parker v. Howarth, 340 So.2d 434, 437 (Miss. 1976); Aponaug Manufacturing Co. v. Collins, 207 Miss. 460, 473, 42 So.2d 431, 434 (1949).
In its written opinion in accordance with Section 73-3-327 (Supp. 1982), the Complaint Tribunal recognized the clear and convincing evidence burden of proof imposed upon the Bar when it stated:
In this case, in order to show that the Respondents [Levi and Denham] should be disciplined or disbarred, the Mississippi State Bar has the burden of showing a violation ... by clear and convincing proof.
In re Quinn's Disbarment, 223 Miss. 660, 665, 78 So.2d 883, 884 (1955); Ex Parte Redmond, 156 Miss. 439, 452, 125 So. 833, 835 (1930).
And in its brief on this appeal, the Bar acknowledges "that the burden to be met in support of discipline is clear and convincing proof," citing Mississippi State Bar v. Phillips, 385 So.2d 943 (Miss. 1980) and Netterville v. Mississippi State Bar, 397 So.2d 878, 884 (Miss. 1981).
The Bar here charges that Levi and Denham have violated Mississippi Code of Professional Responsibility Disciplinary Rule 1-102(A)(4) and 1-102(A)(6) which provide as follows:
9. DR 1-102[A][4] provides:
"DR 1-102 Misconduct.
[A] A lawyer shall not:
* * * * * *

*784 [4] Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."
10. DR 1-102[A][6] provides:
"DR 1-102 Misconduct.
[A] A lawyer shall not:
* * * * * *
[6] Engage in any other conduct that adversely reflects on his fitness to practice law."
The Bar also charges that Levi and Denham have violated Miss. Code Ann. § 73-3-35 (1972), which requires each attorney to swear or affirm to use no falsehood.
Notwithstanding the proceedings below, we hold that the Mississippi State Bar has the burden of proving in this Court by clear and convincing evidence each and every evidentiary and ultimate fact necessary to support a judgment that either Levi or Denham should be disciplined or disbarred. We emphasize that we do not here inquire whether there was sufficient evidence so that the Complaint Tribunal, as a hypothetical rational trier of the facts, might have found against Levi and Denham by clear and convincing evidence. Certainly, when it is performing its important duties, the Complaint Tribunal should employ the clear and convincing evidence standard. In the present posture of this case, however, our inquiry is whether the evidence persuades us clearly and convincingly that either Levi or Denham has been guilty of misconduct as defined in the two disciplinary rules and the statute mentioned above.

IV. The Undisputed Facts

There are certain undisputed facts which form the backdrop of these complaints.
At all times relevant to these proceedings Levi, Denham, and James W. Wilson ("Wilson" hereafter) were attorneys at law, members of the State Bar of Mississippi, and subject to the disciplinary agencies created by Miss. Code Ann. section 73-3-301, et seq. (Supp. 1982).
Levi and Denham reside in Jackson County, Mississippi.
In January, 1976, Levi, Denham and Wilson were engaged in the practice of law as a professional association known as "Levi, Wilson & Denham, A Professional Association" ("firm" hereafter). Each owned a 1/3 interest in the firm.
On January 9, 1976, Erwin Padgett, Jr. ("Padgett" hereafter) executed a contingent fee contract with the firm, employing the firm to represent him in a personal injury action for injuries sustained by him in an automobile accident. Under this contract, the firm would receive as legal fees 50% of all sums recovered after a trial had commenced.
On December 7, 1976, a declaration was filed on behalf of Padgett in the Circuit Court of Jackson County, Mississippi.
By that time Padgett had become quite dissatisfied with Wilson's services, primarily because Wilson refused to communicate with him. Padgett came to the office to discharge Wilson and obtain his file. Levi and Denham, however, persuaded Padgett to leave the case with the firm, provided Wilson would no longer have responsibility for the file.
On January 21, 1977, Wilson resigned from the firm. He, Levi and Denham agreed to a division of all property belonging to the firm. Under that agreement any fee resulting from the Padgett case was to be divided equally among Levi, Denham and Wilson.
Padgett's trial came on for hearing in the Jackson County Circuit Court on July 21, 1977. Levi and Denham were both present for the trial and both participated in the trial. Denham had done most of the pre-trial preparation and had dealt with Padgett more than Levi up to this point.
During the course of the trial, the defendants in the Padgett case began settlement negotiations. Padgett insisted that he needed a minimum of $128,000.00 net to him. Levi and Denham agreed to reduce the legal fee so that Padgett could net $128,000.00 out of $173,500.00 settlement. On this basis, the settlement offer of $173,500.00 was accepted.
*785 A few days after the settlement was reached Levi advised Wilson of the settlement. He also gave Wilson a handwritten disbursement sheet showing a total fee of $42,867.59 and a net distribution to Padgett of $126,480.16. Under their previous agreement, Levi, Denham and Wilson would each receive one-third of $42,867.59.
The settlement draft arrived in the firm's office on or about August 10, 1977. That same day Padgett and his wife went to the firm's office to get his money. At this time Denham was in Canada on vacation. All of Padgett's dealings were with Levi.
Levi advised Padgett that he could not disburse the funds from the settlement check until the check had cleared. Padgett, however, insisted that he receive funds that day. Padgett wanted the money that day so that he could immediately invest it and receive interest for the entire month of August.
Levi then arranged at a local bank for sufficient credits to allow issuance to Padgett of a check for $90,474.36 on August 10, 1977. The settlement draft of $173,500.00 had been deposited in the firm trust account. Having done this, Levi then issued the check to Padgett and had Mr. and Mrs. Padgett sign a typed disbursement sheet. The disbursement sheet showed a total legal fee of $42,856.28 and a net disbursement to Padgett of $126,446.20.
On August 10, 1977, Levi gave Wilson a firm check for $14,326.30 and a copy of the settlement sheet signed by the Padgetts.
Although Levi did ask Wilson to hold the check until the settlement check cleared, Levi did not tell Wilson that a partial disbursement of $90,474.36 had been made to Padgett.
On August 17, 1977, Levi was notified by the bank that the settlement draft had cleared. He immediately called Padgett and told him the remaining funds were available.
During the course of the telephone conversation between Levi and Padgett on August 17, 1977, Padgett, on "a spur of the moment," decided to let Levi and Denham keep the $35,930.96, provided they would pay any outstanding medical bills that had not yet been paid. Padgett testified that he had used the $90,000.00 to take care of his own needs. He gave the remainder to Levi and Denham in appreciation of their efforts on his behalf.
The Bar insists that the gift theory was a sham. It argues that the settlement was agreed to without any reduction in fee by Levi and Denham. The essence of what happened, the Bar argues, is that Levi and Denham made misrepresentations to Wilson for the purpose of defrauding him.
We view these charges de novo, as explained in Part II above. We further view these charges under the clear and convincing evidence standard discussed in Part III above.

V. The Applicable Law

Levi and Denham have been charged with violations of Disciplinary Rules 1-102(A)(4) and (6). These Disciplinary Rules ("DRs" hereafter) have been approved by this Court. Unpublished Order of the Mississippi Supreme Court, March 15, 1971; Ex Parte the Mississippi State Bar, Misc. No. 816 (Unpublished Order of the Mississippi Supreme Court, September 19, 1977); Mississippi Code of Professional Responsibility, Mississippi State Bar, p. 1. The violation of those rules by members of the State Bar of Mississippi constitute grounds for disciplinary action pursuant to Miss. Code Ann. Section 73-3-301 et seq. (Supp. 1982). See, e.g., Miss. Code Ann. Section 73-3-143(1) (Supp. 1982).
The obligations and responsibilities of an attorney transcend the attorney-client relationship and encompass all professional conduct by the attorney. While it has been held that in his non-professional relations an attorney "is held to no higher standard of morals or ethics than are men of other trades, callings and professions," Ex Parte Redmond, 156 Miss. 439, 455, 125 So. 833, 837 (1930), even in his non-professional conduct an attorney must be honest and truthful.
*786 The professional conduct of an attorney includes all conduct resulting from the fact that the individual is an attorney. Thus, the DRs, especially DR 1-102, apply to an attorney in his relationship with the courts and with his brother attorneys just as much as with his clients. We have recognized this in the case of In Re Poole, 222 Miss. 678, 76 So.2d 850 (1955):
"The attorney occupies a unique place in our society; he has great opportunity for useful and honorable service, with an equally great responsibility to maintain the highest standard of professional conduct; ... his conduct involves the integrity of the courts of which he is an officer, and the good name of the legal profession; and the very essence of his professional function is confidence and trust. One must possess good moral character to enter the practice of law; and to continue in the profession, this standard of moral character must be maintained. Inexperience, weakness and personal hardship do not excuse conduct inconsistent with common honesty." 222 Miss. at 686, 76 So.2d at 853.
The DRs were not adopted solely for the protection of clients. They were adopted as part of the effort of the Supreme Court to maintain the highest standards of professional conduct by the members of the Bar in all facets of their professional life.
An attorney's conduct toward his fellow attorneys is part of his professional conduct covered by DR 1-102 and by all other DRs not specifically limited to the attorney-client relationship. See, e.g., In Re Berkeley, 174 App.Div. 205, 160 N.Y.S. 1093, (1916) affirmed 243 N.Y. 597, 154 N.E. 621 (1926) (held grounds for disbarment that an attorney fraudulently attempted to prevent his former partner from collecting his share of the profits of the partnership in an accounting action).
In its brief the Bar has cited to us numerous cases articulating the important state interest in preserving public confidence and respect in the integrity of Mississippi's lawyers. To be sure, the people of this state, as well as those who are engaged in the practice of law, have such an interest, and it is substantial. Bar disciplinary proceedings are no doubt an important and vital vehicle toward the vindication of that interest. It has been argued to us with considerable force that the purpose of bar disciplinary proceedings is not to punish the respondent lawyer but to vindicate in the eyes of the public the overall reputation of the bar. We do not question the validity and importance of these premises; rather, we reaffirm them.
We likewise reaffirm the proposition that the practice of law is a privilege, not a property right, and a revocable privilege at that. In Re Poole, 222 Miss. 678, 686, 76 So.2d 850, 853 (1955); Mississippi State Bar v. Attorney-Respondent, 367 So.2d 179, 183 (Miss. 1979).
We do no violence to these premises when we recognize that, before either may be deprived of the privilege of practicing law, temporarily or permanently, Dempsey M. Levi and Earl L. Denham each has a right that the Mississippi State Bar persuade this Court by clear and convincing evidence that each has been guilty of "misconduct" as defined in Disciplinary Rules 1-102[A][4] and [6] and of uttering a falsehood in violation of his oath prescribed in Miss. Code Ann. § 73-3-35 (1972).
What is happening here is that this Court is being asked to sacrifice this right in favor of something not a right at all, something less than a right. We would not do this in a criminal case, see Read v. State, 430 So.2d 832, 840 (Miss. 1983), and we will not do it in these quasi-criminal proceedings. Rights are customarily thought of as entitlements of an individual which he or she may claim no matter how inconvenient society or its members may deem it or no matter how powerful or compelling may be the interests arrayed against it. The interest of the Mississippi State Bar in preserving its reputation for honesty and fair dealings must not be allowed to override the right vested in Levi and Denham that they not be disciplined or disbarred except in accordance with the procedures established *787 by our law. Cf. Netterville v. Mississippi State Bar, 397 So.2d 878, 884 (Miss. 1981).

VI. The Core Facts Viewed De Novo Under the Clear and Convincing Evidence Standard

The Bar's case against Levi and Denham centers upon its charge that the "gift theory" was a sham or artifice used to defraud Wilson. Levi and Denham are charged to have made material misrepresentations in connection therewith. There is indeed some evidence before us wholly consistent with this notion.
We are charged by law to inquire whether the evidence is clear and convincing that either Levi or Denham has been guilty of misconduct.
The crux of the matter is this. Padgett testified that he was upset to learn that Wilson was going to receive any part of the fee. He did not feel that Wilson had done anything for him. He did not think it fair that Wilson be paid for his work on the case. Moreover, Padgett was upset to learn that Levi and Denham would receive only $28,000, rather than the $42,000 "reduced" fee agreed upon on the day of the settlement.
Excising as we must suspicion and cynicism, we credit Padgett's explanation of the $35,000 gift taken from the Abstract of the Record, to-wit:
One of them [Levi or Denham] called me and in the discussion that followed they told me the money was there, they were ready to disburse the rest of the money that... . [At that] time I had completed all of my disbursements, I had completed setting up my life and that was the time that I told them to utilize that money ... . it is a fact that at the time I made the payment of $35,000 of my remaining proceeds to Mr. Denham and Mr. Levi, that this amount was conditioned upon them using these fees in their confidentiality regarding telling them of this gift. I have repeatedly, ..., requested confidentiality regarding that particular matter... . I felt somewhat guilty in that I feel that Mr. Levi and Mr. Denham had not been fully taken care of like they should have been. I felt like this particularly after I found out that he [Wilson] was getting equal share, he, meaning Mr. Wilson. If he got whatever the figure came to and Mr. Levi and Mr. Denham got the same amount, this is not equal, in my way of thinking, because he gets an equal share for doing nothing for a period of time during which I was entirely dissatisfied.
Considering all of the testimony and exhibits in the record before us, we hold that the Mississippi State Bar has failed to establish by clear and convincing evidence that Padgett's allowing Levi and Denham to retain the additional $35,000 was anything other than a bona fide gift.[1] From this it follows that neither Levi nor Denham may be said to have made any false or material misrepresentation to Wilson.
We hold further that at all times relevant hereto an attorney-client relationship existed between Levi and Denham, on the one hand, and Padgett on the other hand. Had Levi or Denham disclosed to Wilson the fact of the gift, without Padgett's *788 consent, there would have been a violation of the attorney-client privilege.
None of this is to say that we condone the actions of Levi and Denham in this case.[2] Without doubt, they should have advised Padgett that their agreement with Wilson made incident to the breakup of the law firm necessitated disclosure to Wilson of the fact of the $35,000 gift. Considering this record de novo as we must and faithfully applying the burden of proof mandated by law, we hold that the Bar has failed to prove by clear and convincing evidence that either Levi or Denham is guilty of misconduct within the meaning of DR 1-102[A][4] or [6]. To be sure these two attorneys stand convicted of errors in judgment. Yet those errors do not rise to the dignity of "misconduct" within the meaning of the Code of Professional Responsibility.
The same must be said of the charges that either Levi or Denham has uttered a material falsehood in violation of his oath under section 73-3-35. The evidence against these two attorneys is simply not clear and convincing.

VII. Postscript

Nothing said here should in any way detract from our firm conviction that the Mississippi State Bar has proceeded in this matter in complete good faith. Indeed we have recognized in Netterville v. Mississippi State Bar, 404 So.2d 1026 (Miss. 1981) that
the Mississippi State Bar, through its duly constituted officials, is mandated by law to receive, investigate and dispose of complaints filed against its members. 404 So.2d at 1028.
The Bar has discharged its duty here. Likewise nothing said here should in any way be taken as indicating a view of less than complete respect and appreciation for the work of the volunteers who serve on the Mississippi State Bar Complaint Tribunal. Their task is as thankless as it is arduous. That we have, in the exercise of our nondelegable duty, first, to review the evidence de novo and, second, to assure that the complaint has been proved by clear and convincing evidence, determined to dismiss should not detract from our respect and appreciation for the work of the members of the Bar in this and other disciplinary cases.
We live in a day of public cynicism toward lawyers. Like it or not, many of our citizens believe most lawyers will do anything for a fee. When the organized Bar claims the prerogative of policing its own, the public is skeptical.
Our concern today ought and must be the case of Dempsey M. Levi and Earl L. Denham. Our charge has been a dispassionate review of the evidence adduced in this case, aware of, but uninfluenced by, the climate of public opinion.
It would have been easy to sustain this complaint and disbar these attorneys. Many would applaud. The case would be lifted up as evidence that this Court and the organized Bar are getting tough with lawyer misconduct. Yet to have allowed ourselves to be seduced by these considerations would have led to a serious violation of our duty in hearing cases such as this, a serious (and irremediable) violation of procedural rights vested in Levi and Denham.
We do indeed need an effective program of lawyer discipline. Great progress has been made in this area, particularly since the enactment of our current complaints procedure almost a decade ago. Miss. Laws (1974) ch. 566, as amended by Miss. Laws (1981) ch. 480. See Matter of Mississippi State Bar, 361 So.2d 503 (Miss. 1978); and Netterville v. Mississippi State Bar, 397 *789 So.2d 878 (Miss. 1981). Yet we must always be conscious that a vigorous complaints committee cannot even begin to do the job alone. The ultimate and primary source of discipline of attorneys is, and always will be, self-discipline.
In view of the disposition made of the central issue in this appeal, the other points raised by the parties need not be addressed.
REVERSED ON DIRECT APPEAL AND COMPLAINT DISMISSED WITH PREJUDICE; AFFIRMED ON CROSS-APPEAL.
PATTERSON, C.J., WALKER, P.J., BROOM, P.J., and ROY NOBLE LEE, BOWLING and DAN M. LEE, JJ., concur.
HAWKINS and PRATHER, JJ., take no part.
NOTES
[1] Nothing said here is inconsistent with the outcome of the civil action brought by James W. Wilson against Levi and Denham. See proceedings in Case No. 34,929 on the docket of the Chancery Court of Jackson County. Levi effected an out of court settlement with Wilson pursuant to which he paid Wilson $6,500.00. A decree was entered November 27, 1979, which recites that "the Court does not find evidence of fraud or misrepresentation". On March 25, 1980, a final decree was entered in favor of Wilson and against Denham in the amount of $5,988.49. The Court in effect found that the $35,930.96 should be treated as a fee derived from the Padgett case within the meaning of the dissolution agreement Denham had with Wilson. The amount of the judgment has been paid by Denham. No finding of fraud or misrepresentation was made. Beyond that, any findings of fact implicit in these civil proceedings were necessarily made only by a preponderance of the evidence. In any event, the Bar makes no collateral estoppel argument, which of course would be inconsistent with this Court's peculiar role as fact finder in bar disciplinary matters.
[2] In this connection, we call attention to Ethical Consideration 5-5, from the Code of Professional Responsibility of the Mississippi State Bar, approved March 15, 1971, by this Court as amended March 16, 1983, which reads, in pertinent part, as follows:

EC 5-5 A lawyer should not suggest to his client that a gift be made to himself or for his benefit. If a lawyer accepts a gift from his client, he is peculiarly susceptible to the charge that he unduly influenced or overreached the client. If a client voluntarily offers to make a gift to the lawyer, the lawyer may accept the gift, but before doing so, he should urge that his client secure disinterested advice from an independent, competent person who is cognizant of all the circumstances.