621 So.2d 220 (1992)
ATTORNEY M
v.
MISSISSIPPI BAR.
No. 90-BA-0632.
Supreme Court of Mississippi.
July 1, 1992.
*221 Thomas J. Lowe, Jr., Wm. Roberts Wilson, Jr., Mitchell H. Tyner, Jackson, for appellant.
Charles J. Mikhail, Jackson, for appellee.
En Banc.
McRAE, Justice, for the court:
The central question in this appeal is whether an attorney may ethically tape record a conversation with a potential party opponent without the knowledge or consent of the other conversant. We hold that under the circumstances attending this case, such conduct offends neither the Mississippi Rules of Professional Conduct nor Attorney's Oath prescribed in Miss. Code Ann. § 73-3-35 (1972). We now reverse the decision of the Complaint Tribunal to the extent that it conflicts with this ruling.

FACTS
The basic facts are undisputed. On June 6, 1988, an individual whom we shall refer to as "Ms. J" employed the appellant (hereinafter "Attorney M") to represent her in a medical malpractice action. The events surrounding Ms. J's tort action, while not directly determinative of the issues sub judice, are helpful in understanding the sequence of events leading up to the Bar complaint against Attorney M and are thus set out as follows:
Ms. J had suffered a dislocated shoulder in an eighteen-wheeler accident on August 16, 1986. Following the accident she had been taken to a hospital where a physician ("Dr. C") attempted to "reduce" her shoulder (i.e., put the arm back into its socket). Dr. C then transferred Ms. J to a second hospital where "Dr. M" again attempted to reduce the shoulder. An x-ray taken after Ms. J arrived at the first hospital but before Dr. C attempted to reduce the shoulder revealed at least one fracture in Ms. J's shoulder. According to Dr. C's testimony before the Complaint Tribunal, however, the fracture was obscured on this initial x-ray so that no one noticed it until after Dr. M had treated the shoulder. X-rays taken after Dr. M's treatment revealed multiple fractures of the shoulder socket and humerus. Since no x-ray was taken between the time when Dr. C attempted to reduce the shoulder and the time when Dr. M treated the patient, it was impossible to ascertain from the x-rays alone which treating physician, if either, caused or aggravated Ms. J's disability. The record reflects, however, that Dr. C employed gentle manipulations only while Dr. M's treatment was accompanied by severe pain and snapping sounds.
On July 27, 1988, Attorney M telephoned Dr. C. In the ensuing conversation, Attorney M informed Dr. C that his call concerned Dr. C's treatment of Ms. J. After Dr. C told Attorney M that he would not discuss Ms. J's treatment without a medical authorization from Ms. J, Attorney M told Dr. C to expect a registered letter containing an authorization and an explanation of why Attorney M wished to speak with Dr. *222 C. Attorney M tape recorded the conversation without informing Dr. C or obtaining his consent.
On July 28, 1988, Attorney M mailed to Dr. C the promised letter and authorization. In the letter (dated July 27) Attorney M recounted the circumstances surrounding Ms. J's injury and assured Dr. C that he had done nothing to cause the injury. Attorney M warned Dr. C, however, that he (Attorney M) might be forced to join Dr. C as a co-defendant in a malpractice action against Dr. M unless Dr. C were willing to make a statement declaring that Ms. J left his care at the first hospital in the same condition as when she arrived. Attorney M asked Dr. C to return his call and allow Attorney M to record the conversation. Dr. C chose not to make the requested telephone call.
On August 3, 1988, Attorney M telephoned Dr. C again. As in the previous conversation, Attorney M assured Dr. C that "you didn't do anything wrong," and insisted that "I'm trying to get you off the hook, I mean forever." Dr. C responded by saying that he did not feel like he was on the hook and that he did not think he or Dr. M had done anything wrong. Attorney M again recorded the telephone conversation without informing Dr. C or obtaining his consent.
In a letter to Dr. C dated August 4, 1988, Attorney M indicated to Dr. C that he had taped the second (August 3) telephone conversation.
Dr. C testified before the Complaint Tribunal that at the time of his conversations with Attorney M, he assumed his statements were being recorded. He further testified, however, that he did not know about the recording until receiving the August 4 letter. Attorney M admitted that he neither informed nor obtained the consent of Dr. C before recording the conversations.
On April 17, 1989, the Mississippi State Bar ("the Bar") filed a complaint against Attorney M after Dr. C filed the complaint. The complaint charged that Attorney M had engaged in unethical conduct by recording two telephone conversations between himself and Dr. C without Dr. C's knowledge or consent and by threatening to sue Dr. C. unless Dr. C agreed to make a statement. The Bar claimed:
(1) that the surreptitious taping violated MRPC Rule 8.4(c)-(d) which provided that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation or engage in conduct prejudicial to the administration of justice;
(2) that the threat of legal action violated MRPC Rule 4.4 which provides that in representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay or burden a third person, or use methods of obtaining evidence which violate the legal rights of such a person; and
(3) that the preceding ethical violations constituted a breach of the Attorney's Oath, set out in Miss. Code Ann. § 73-3-35, which includes the attorney's promise to demean himself with good fidelity to court and client and to abstain from the use of falsehood.
The Complaint Tribunal unanimously dismissed on preliminary motion the allegation that Attorney M violated the statutory Attorney's Oath. After the parties had presented their evidence, the Tribunal unanimously found that Attorney M had not violated MRPC Rule 4.4. The Tribunal found on a 2-1 vote, however, that Attorney M's conduct violated MRPC Rule 8.4(c)-(d) and entered a judgment imposing a private reprimand.

LAW

A. The Alleged Rule 8.4 Violation

The Bar's case against Attorney M relies primarily upon Formal Op. 337, published by the ABA Committee on Ethics and Professional Responsibility in 1974. Formal Op. 337 states:
"[T]he conduct proscribed in DR 1-102(A)(4) [currently Rule 8.4(c)], i.e., conduct which involves dishonesty, fraud, deceit or misrepresentation in the view of the Committee clearly encompasses the making or recordings without the consent *223 of all parties... . [T]he Committee concludes that no lawyer should record any conversation whether by tapes or other electronic device without the consent or prior knowledge of all parties to the conversation."
The opinion expressly exempts prosecuting attorneys.
The response of state bar associations and the various judicial jurisdictions to Formal Op. 337 has been mixed. While the majority of published opinions adopt the ABA holding, some have rejected it in toto.[1]
This Court has made several favorable references to Formal Op. 337, but we have never formally adopted it.[2] In Netterville v. Mississippi State Bar, 397 So.2d 878 (Miss. 1981) we established a rule considerably broader than the one set out by the ABA. In Netterville, an attorney who had filed suit against a corporation secretly recorded a telephone conversation with a former shareholder of the corporation. During the conversation, the attorney solicited information concerning the former shareholder's relations with the corporation and secured the names and addresses of other potential adverse witnesses. The Bar filed a complaint, but we dismissed the action and found that secret recordings are not unethical when "the information requested [by the attorney during the telephone conversation] was of such a nature as reasonably to import to the person called the probability, if not certainty, that it would be taken down in some manner for future use." More generally, we ruled that surreptitious tape recording is not unethical when the act, "considered within the context of the circumstances then existing," does not rise to the level of dishonesty, fraud, deceit or misrepresentation. Netterville, 397 So.2d at 883.
We prefer the rule established by Netterville over the one embodied in Formal Op. 337. The Netterville Rule applies equally to all attorneys, regardless of their niche in the practice of law. We see no principled basis for a rule under which it is ethical for a prosecuting attorney to surreptitiously record conversations with potential adverse witnesses but unethical for other attorneys to do the same thing. The writers of Formal Op. 337 based the prosecutor exception on the holding of United States v. White, 401 U.S. 745, 751, 91 S.Ct. 1122, 1126, 28 L.Ed.2d 453 (1971) in which the United States Supreme Court held that a government agent may constitutionally record any statement made by a criminal so *224 long as the mere hearing of the statement by the agent would not violate the speaker's justifiable expectations of privacy. Formal Op. 337 apparently sought to work around White by limiting its rationale to the context of criminal prosecutions. The distinction is ill founded, however, because even law-abiding citizens have limits on their justifiable expectations of privacy. Generally speaking, an attorney is not ethically bound to keep the confidences of any person other than his client. Absent some express or implicit assurance to the contrary, a person who speaks to an attorney with whom he has no attorney-client relationship must realize that his statements are subject to publication.[3] This is true regardless of whether the attorney is a prosecutor, and it is particularly true where the speaker is a potential or actual adverse witness.
Formal Op. 337 states unconditionally that secret tape recordings by attorneys other than prosecutors violate the ethical "obligation to be candid and fair." Truly, the abusive use of such tactics is distasteful and falls below the standards of professional conduct expected of lawyers. The categorical pronouncement of Formal Op. 337, however, goes too far. We tend to agree in principle with the Arizona State Bar which has held that while ordinary lawyers should not resort to surreptitious recordings, situations will arise where its use is both necessary and proper. See Arizona State Bar, Opinion No. 75-13 (1975). Under certain circumstances, for example, an attorney may be justified in making a surreptitious recording in order to protect himself or his client from the effects of future perjured testimony. On the other hand, an attorney who uses a secret recording for blackmail or to otherwise gain unfair advantage has clearly committed an unethical  if not illegal  act. Ethical complications arise not so much from surreptitious recordings per se as from the manner in which attorneys use them. The Netterville context-of-the-circumstances test contemplates this distinction; Formal Op. 337 does not.
Regarding Formal Op. 337's emphasis on fairness and candor, we cannot help but note that the person most likely to have his candor called into question is the one who testifies to a set of facts and is then confronted with a tape recording of prior statements to the contrary. The value of secret tape recordings in ferreting out truth is beyond question, and this Court has observed that the admission of such recordings into evidence is sometimes "fully justified." Miller, 484 So.2d at 338; see also Wilkins v. Bancroft, 248 Miss. 622, 160 So.2d 93 (1964) (surreptitious recording properly admitted into evidence to impeach adverse party). We hasten to note, however, that the ethical propriety of making secret recordings for the purpose of future impeachment is a matter not presently before us. We therefore express no opinion regarding that question.[4]
Applying the Netterville test to the instant case, we find that Attorney M's conduct did not rise to the level of "dishonesty, fraud, deceit, or misrepresentation." First, the express purpose of each telephone call was to obtain a statement from Dr. C concerning the physical condition of Attorney M's client upon leaving Dr. C's care. Such information is indisputably "of such a nature as reasonably to import to the person called the probability, if not certainty, that it would be taken down in some manner for future use." Further, the circumstances surrounding the incident do not suggest dishonesty, fraud, deceit, or misrepresentation. In fact, the circumstances *225 were such that Dr. C admittedly assumed that he was being taped. During one of the telephone conversations, Attorney M expressly stated that he wished to record Dr. C's statement. In addition, there is no indication that Attorney M planned to use the recordings for any improper purpose. Contrary to the finding of the Complaint Tribunal, Attorney M did not violate MRPC Rule 8.4.

B. The Alleged Rule 4.4 Violation

The Tribunal properly found that Attorney M did not violate MRPC Rule 4.4. The record does not support the Bar's contention that Attorney M engaged in conduct that had "no substantial purpose other than to embarrass, delay, or burden" Dr. C. According to the Bar, Attorney M unethically "burdened" Dr. C by threatening to sue him even after stating that the doctor "didn't do anything wrong." Attorney M, on the other hand, insists that he did not threaten Dr. C but, instead, gave him an opportunity to exonerate himself from a legitimate malpractice claim.
The record reveals that Attorney M's client, Ms. J, had at least a colorable claim against Dr. C. Where a client has a valid claim, it is certainly not unethical for an attorney to threaten to bring suit to enforce that claim. Cf. McGehee v. McGehee, 227 Miss. 170, 183, 85 So.2d 799, 804 (1956) ("It is never duress to threaten to do that which a party has a legal right to do, and the fact that a threat was made of a resort to legal proceedings... which was at least valid in part constitutes neither duress nor fraud"). That Attorney M may have personally viewed the doctor as blameless is irrelevant since, according to MRPC Rule 3.1, an action "is not frivolous even though the lawyer believes that the client's position ultimately will not prevail."
The Bar also asserts that the secret tape recording violated Rule 4.4 by abridging the legal rights of Dr. C. To the contrary, we find that Attorney M's conduct affected no cognizable "legal right" on the part of Dr. C. As we stated previously, Dr. C's right to privacy in his communications did not cover words spoken to an attorney who represented a potentially adverse party. Likewise, under the extant circumstances, Dr. C had no legal right to be free from surreptitious recordings of telephone conversations. 18 U.S.C. § 2511, which governs "Interception and Disclosure of Wire, Oral, or Electronic Communications," expressly states:
It shall not be unlawful under this chapter for a person ... to intercept a wire, oral, or electronic communication, where such person is a party to the communication ... unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.
18 U.S.C. § 2511(2)(d).
Attorney M's action was neither criminal nor tortious.
The Bar has not proven that Attorney M engaged in conduct which had no substantial purpose other than to "embarrass, delay, or burden." Moreover, the attorney's conduct did not violate Dr. C's legal rights. Accordingly, the Bar's charge that Attorney M violated MRPC Rule 4.4 is without merit.

C. The Alleged "Attorney's Oath" Violation

Neither the record nor the pleadings support the Bar's contention that Attorney M breached the Attorney's Oath by failing to abstain from falsehood. Black's Law Dictionary 726 (4th ed. 1951), defines falsehood as "[a] statement or assertion known to be untrue, and intended to deceive." Attorney M made no such statement. The Complaint Tribunal properly dismissed the § 73-3-35 charge.

CONCLUSION
1. The Tribunal erred in finding that Attorney M violated MRPC Rule 8.4. The circumstances surrounding the surreptitious recording of Attorney M's conversation with Dr. C do not suggest dishonesty, fraud, deceit, or misrepresentation. Further, the information Attorney M sought to record was of the type that one might *226 reasonably expect to be taken down for future use.
2. The Tribunal properly found for Attorney M on the Rule 4.4 charge since the attorney's "threat" to sue was not improper. It was merely a statement of his readiness to advocate his client's legitimate claim. In addition, the secret tape recording did not violate Dr. C's legal rights.
3. The Tribunal properly dismissed the Bar's § 73-3-35 charge since neither the pleadings nor the proof establish that Attorney M uttered a "falsehood."
The judgment of the Complaint Tribunal is reversed and the complaint hereby dismissed.
DECISION OF COMPLAINT TRIBUNAL IS REVERSED AND THE COMPLAINT DISMISSED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PITTMAN and BANKS, JJ., concur.
HAWKINS, P.J., dissents by separate opinion joined by PRATHER and SULLIVAN, JJ.
ROBERTSON, J., concurs by separate written opinion joined by DAN M. LEE, P.J., and PITTMAN and McRAE, JJ.
BANKS, J., concurs by separate written opinion.
HAWKINS, Presiding Justice, dissenting:
The majority has the matter precisely backwards. That there may be few and isolated instances when an attorney needs to record a telephone conversation without telling the other party, I have no doubt. The attorney, however, should be prepared to give a very good reason for doing so, in the absence of which he should be reprimanded. There was no good reason in this case for the attorney to tape record this conversation without informing the doctor.
The majority puts the wrong question. The question should not be what objection should the other party have. It is his privacy which has been invaded. The question should be to the attorney: why didn't you tell the other party you were recording the conversation? What was your objection to doing so?
If a doctor or accountant called an attorney and surreptitiously recorded their conversation, what attorney would not resent it and be inclined to report it to that gentleman's or lady's professional association?
This is not a case of an attorney recording an unsolicited telephone call to his own office. It was the attorney who by his call invaded a doctor's office, and there was no reason or excuse whatever not to tell the doctor that he was recording their conversation. The only body in this state with final authority to discipline attorneys is this Court. If we do not do the job, it is not going to get done. Attorneys are proliferating exponentially. Unless this Court insists upon professional ethics, we are gone as a profession.
Mississippi Rules of Professional Conduct (MRPC), effective July 1, 1987, Rule 8.4(c)-(d) states:
It is professional misconduct for a lawyer to:
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice;
The American Bar Association's Committee on Ethics and Professional Responsibility published Formal Opinion 337 in 1974 which stated in pertinent part:
The conduct proscribed in DR 1-102(A)(4), i.e., conduct which involves dishonesty, fraud, deceit, or misrepresentation in the view of the Committee clearly encompasses the making of recordings without the consent of all parties. With the exception noted in the last paragraph, the Committee concludes that no lawyer should record any conversation whether by tapes or other electronic device, without the prior consent or prior knowledge of all parties to the conversation.
There may be extraordinary circumstances in which the Attorney General of the United States or the principal prosecuting attorney of a state or local government of law enforcement attorneys of *227 officers acting under the direction of the Attorney General or such principal prosecuting attorneys might ethically make and use secret recordings if acting within strict statutory limitations conforming to constitutional requirements. This opinion does not address such exceptions which would necessarily require examination on a case by case basis. It should be stressed, however, that the mere fact that secret recordation in a particular instance is not illegal will not necessarily render the conduct of a public law enforcement officer in making such a recording ethical.
In J.C. Penney Co., Inc. v. Blush, 356 So.2d 590 (Miss. 1978), a case in which an attorney surreptitiously tape recorded a telephone conversation, we quoted from Formal Opinion 337, and concluded: "We consider the principles enunciated to be sound and suggest that, upon retrial, they be borne in mind and adhered to by counsel." 356 So.2d at 595.
In Netterville v. Mississippi State Bar, 397 So.2d 878 (Miss. 1981), a complaint was filed against an attorney charging him with tape recording a telephone conversation and having a secretary take the conversation in shorthand and transcribe it, all without telling the other party. Again, we approved Formal Opinion 337, but because there was no evidence that the attorney tape recorded the conversation, we reversed. The majority is incorrect in stating Netterville gave a broader interpretation to Formal Opinion 337. In that case the question was whether having a secretary take down the conversation in shorthand without telling the other party was unethical as well, and we said this was not necessarily unethical when the attorney simply was trying to get the names and addresses of witnesses.
If there could be any doubt, however, as to this Court's position on Formal Opinion 337, it was clearly removed in National Life and Accident Insurance Co. v. Miller, 484 So.2d 329, 338 (Miss. 1985):
Although we have previously disapproved of attorneys secretly tape recording conversations with adverse parties, Netterville v. Miss. State Bar, 397 So.2d 878 (Miss. 1981), we have also held that the admission of a tape recording and transcript into evidence under like circumstances was fully justified. Wilkins v. Bancroft, 248 Miss. 622, 160 So.2d 93 (1964). We take this opportunity to clarify our position. An attorney's action in secretly tape recording conversations with adverse parties cannot be condoned. In J.C. Penney Co., Inc. v. Blush, 356 So.2d 590 (Miss. 1978), this Court adopted the formal opinion 337, A.B.A. Committee on Ethics and Professional Responsibility, which stated in part: "The committee concludes that no lawyer should record any conversation whether by tapes or electronic device, without the consent or prior knowledge of all parties to the conversation." (Emphasis added)
The majority dances around the clear holdings of Blush and Miller in a footnote.
On a matter as plain as this, it is not necessary to have other states' view of Formal Opinion 337.
Yet, a majority of the American jurisdictions have adopted Formal Opinion 337 stating that a lawyer's secret recording of a conversation does constitute professional misconduct. See People v. Wallin, 621 P.2d 330 (Colo. 1981); Gunter v. Virginia State Bar, 238 Va. 617, 385 S.E.2d 597 (1989); Alabama Bar Association, Opinion No. 84-22; Dallas Bar Association, Opinion No. 1981-5 (1981); Ethics Committee of the Kentucky Bar Association, Opinion No. E-289 (1984).
In Matter of An Anonymous Member of the South Carolina Bar, 283 S.C. 369, 322 S.E.2d 667 (1984) the South Carolina Supreme Court adopted Formal Opinion 337 stating that an attorney is guilty of misconduct under DR 1-102(A)(4) [Rule 8.4(c)] where a recording is made of a conversation with an adversary or a potential adversary without the knowledge of all parties to the conversation.
The transgression of this attorney was fortunately minor. What is serious, and what I respectfully submit will be read with dismay by judges and lawyers who *228 every day uphold the honor and dignity of our profession is the fact that a majority of this Court finds nothing unethical about it.
PRATHER and SULLIVAN, JJ., join this opinion.
ROBERTSON, Justice, concurring:
I found Attorney M's conduct offensive, until I thought about it. Lawyers live on the telephone and in due course talk often to third persons  potential witnesses, unrepresented (potential) defendants, and others. That he does this and that he remembers what he is told is vital to the lawyer's competence in his undertaking. We would admire, if not commend, the lawyer who recalled verbatim what a witness told him over the telephone. So long as the lawyer fairly identified himself, his representation and his purpose, no one would think that lawyer engaged in "conduct involving dishonesty, fraud, deceit or misrepresentation." This is the lawyer's due respect for his conversant's privacy.
The lawyer must have means of preserving what the other person said. Because most lack an audiographic memory, the lawyer traditionally has taken notes during a telephone conversation. I doubt anyone doubted propriety in this, nor would anyone question the lawyer who, after hanging up the phone, dictated a memorandum to the file. More to the point, we do not expect the lawyer to say, "I am going to take notes of our conversation," or, "Once we are through talking, I intend to dictate a memo to my file." I do not think it unfair to charge members of the non-lawyer public with common sense, such that they should realize a lawyer does not call for idle conversation but intends to act on what he is told, should it be legally relevant. He implicitly consents the lawyer may do this.
We would not be here today if Attorney M had merely taken notes of his conversation with Dr. C. or dictated a memo to the file. Experience and reflection call to mind difficulties with these conventional strategems. Training and experience in attention to (legally relevant) detail have not overcome human frailty to the point where lawyers cease to make mistakes. Memories fade. Our notes are likely to be incomplete. We write one thing while the witness says another and get both less than precisely accurate. The memo to the file inevitably involves interpretation, an emphasis on the facts the lawyer thought helped his side and perhaps a neglect of others. A lawyer's hearsay is no more reliable than anyone else's.
In the face of all of this, one would think we would welcome a means of perfecting the lawyer's memory of what his communicant has said. A rational, fair-minded and candid third person should delight that the lawyer recorded what he said, rather than taking notes or the like. Recordings should breed confidence, a security from later distortion. I find it nonsensical that any who understand the lawyer's calling would take offense that he uses modern technology to enhance his memory. It is no answer that a tape may be doctored. So may notes and memos.
Formal Opinion 337 and those who would follow it perforce accept some value in allowing one who talks to a lawyer fair chance to deny later what he has said. The criteria of "dishonesty, fraud, deceit or misrepresentation" should be brought to bear on other features of such a telephone conversation. What I say today is predicated upon a lawyer's making full disclosure of his identity, his representation, and his purposes. I believe as well a lawyer should answer candidly if asked whether the conversation is being recorded. The deposition subpoena is an effective weapon against the recalcitrant.
These things said, I do not deny our intuitive offense at undisclosed and un-consented-to tape recordings of conversations. But why are we offended? We want wiggle room. We want protection from our faulty memories or less than complete answers to the lawyer's question. We want the chance to think of a better answer if haled into court. The law should not countenance such self-interest. If this induce more care in talk with attorneys, so much the better. The system and the persons it serves will profit in the end.
*229 I would add, that a party or his representative has such a tape recording is a proper subject of pre-trial discovery. See Rules 26(b)(1) and 34(a)(1), Miss.R.Civ.P.; Rule 4.06(a)(1), Miss.Unif.Crim.R.Cir.Ct.Prac. The use of such a tape recording at trial is regulated fairly by our rules of evidence. See Rules 613(a) and 901(a), Miss.R.Evid.; cf. Doby v. State, 557 So.2d 533, 541-42 (Miss. 1990); Middlebrook v. State, 555 So.2d 1009, 1011-13 (Miss. 1990).
DAN M. LEE, P.J., and PITTMAN and McRAE, JJ., join this opinion.
BANKS, Justice, concurring:
I concur in the result reached by the majority. I write briefly to express a slightly different view on the troublesome surreptitious taping issue. I do not agree that the questions asked here fit the mold of the Netterville questions, so that they may be deemed to solicit only information that one would expect to be recorded. Netterville sought addresses, Attorney M sought evidence. I disagree with Justice Robertson that surreptitious taping should be thought the norm and tolerated as such. I also disagree with Justice Hawkins that surreptitious taping violates our code of conduct, as written.
In my view, our present rules are insufficient to the task. Surreptitiously taping or allowing a third party to hear a conversation, where there is no duty of disclosure otherwise imposed, does not clearly violate our rules of professional conduct. No lawyer should be sanctioned for such conduct until we adopt a rule prohibiting it. Mississippi State Bar v. Blackmon, 600 So.2d 166, 178 (Miss. 1992). ABA Formal Opinion 337 is flawed. See, Mississippi Bar v. Attorney ST, 621 So.2d 229 (Miss. 1993) We should adopt a comprehensive rule plainly putting the bar on notice as to what conduct is expected, even if it is as simple as that suggested by Justice Sullivan in his dissent in Attorney ST.
NOTES
[1] A representative list of jurisdictions and bar associations which follow Formal Op. 337 includes the following: Grimes v. United States, 4 Cl. Ct. 205, 206 (1983); Gunter v. Virginia State Bar, 238 Va. 617, 621-22, 385 S.E.2d 597, 600 (1989); In re An Anonymous Member of the South Carolina Bar, 283 S.C. 369, 322 S.E.2d 667, 669 (1984); People v. Selby, 198 Colo. 386, 606 P.2d 45, 47 (1979); Idaho State Bar Opinion No. 130 (1990); Hawaii Disciplinary Board, Opinion No. 30 (1988); Minnesota Professional Responsibility Board, Opinion No. 3 (1986); Alabama Bar Association, Opinion No. 84-22; Dallas Bar Association, Opinion No. 1981-5. A few rulings directly contradict Formal Op. 337. See, e.g., Arizona State Bar, Opinion 90-2 (attorney may surreptitiously tape record interviews of potential witnesses for purposes of avoiding perjury or for purpose of developing impeachment evidence); Tennessee Board of Professional Responsibility, Opinion No. 81-F-14 (1986) (overruling former reliance on Formal Op. 337 and adopting rule allowing secret recordings by defense attorneys for use in criminal investigations, including the recording of potentially adverse witnesses for use as impeachment evidence); Utah State Bar, Opinion No. 90 (allowing surreptitious tape recording of communications with clients, witnesses, or other lawyers). Still other decisions adopt the general principles set out in Formal Op. 337 but formulate additional exceptions and exemptions. See, e.g., Idaho State Bar, Opinion No. 130 (1990) (lawyer may not secretly record conversations with other lawyers and potential witnesses, but may record conversations with client since such communications are confidential); Kentucky Bar Association, Opinion No. E-279 (1984) (creating limited exception for criminal defense attorneys); New York City Bar Association, Opinion No. 80-95 (same).
[2] In National Life & Accident Ins. Co. v. Miller, 484 So.2d 329, 338 (Miss. 1985) this Court loosely stated that we had "adopted" Formal Op. 337 in J.C. Penney Co. v. Blush, 356 So.2d 590, 594-95 (Miss. 1978). Blush, however, merely cited the ABA opinion and questioned in dicta the propriety of surreptitious taping. Miller likewise stated in dicta that "[a]n attorney's actions in secretly tape recording conversations with adverse parties cannot be condoned." Miller, 484 So.2d at 338.
[3] When interacting with non-clients, attorneys must, of course, be mindful of the rules governing "Transactions With Persons Other Than Clients" set out in MRPC Rules 4.1 et seq.
[4] Professor Abraham Abramovsky reasons that where surreptitious recordings are unethical yet admissible as impeachment evidence, an attorney is presented with a "Hobson's choice:" He must choose between his duty to be candid (i.e., the duty to refrain from making surreptitious recordings) and his duty to zealously represent his client (i.e., the duty to muster admissible evidence in support of his client's cause including, if necessary, secret tape recordings). See Abramovsky, Surreptitious Recording of Witnesses in Criminal Cases: A Quest for Truth or a Violation of Law and Ethics?, 57 Tulane L.Rev. 1 (1982).