621 So.2d 229 (1993)
THE MISSISSIPPI BAR
v.
ATTORNEY ST.
No. 90-BA-0552.
Supreme Court of Mississippi.
June 17, 1993.
Michael B. Martz, Charles J. Mikhail, Jackson, for appellant.
James F. Noble, III, Charles G. Copeland, Copeland Cook Taylor & Bush, Jackson, for appellee.
En Banc.

ON PETITION FOR REHEARING
McRAE, Justice, for the Court:
On petition for rehearing, the original opinions of the Court are withdrawn and this opinion substituted therefor.
*230 In this appeal, we consider whether sanctions should be imposed against an attorney who vehemently denied to a potential witness with whom he was speaking on the telephone that he was taping the conversation, when, in fact, that conversation was being recorded. Finding that Attorney ST's actions, while the result of extenuating circumstances, violated Rule 4.1 of the Mississippi Rules of Professional Conduct, we reverse the decision of the Complaint Tribunal and admonish him with a private reprimand.

I.
On April 26, 1989, the Mississippi State Bar filed a Formal Complaint charging Attorney ST with violations of Mississippi Rule of Professional Conduct 8.4(c)[1] and 8.4(d) and of the attorney's oath pursuant to Miss. Code Ann. § 73-3-35 (1972)[2] for surreptitiously taping two telephone conversations with an acting City Judge and one with the City Police Chief, and for telling the Chief he was not recording their conversation when, in fact, he was.
On July 12, 1989, ST filed his answer to the Formal Complaint, specifically denying the Bar's allegations that he violated Rule 8.4(c) and 8.4(d) and § 73-3-35, and setting forth a separate defense that complete and absolute fidelity to the interests of a client is required and that the conversations were taped to protect the interests of ST's client and to ascertain and memorialize the truth.
On April 13, 1990, this cause was brought for hearing before a complaint tribunal, consisting of the Honorable Edward A. Williamson, the Honorable Irvin L. Martin, Jr., and the Honorable W. Allen Pepper, Jr. After hearing oral argument from opposing counsel and limited testimony from ST, the Tribunal determined that the taping of the three conversations did not constitute dishonesty, fraud, deceit or misrepresentation in violation of Rule 8.4(c). In this regard, the Tribunal stated that restricting the actions of an attorney in the position of ST with the proscriptions of Rule 8.4(c) puts the attorney on the "horns of a dilemma" by impeding his pursuit of the truth and the judicial process, and constitutes a dual standard between laymen and members of the bar.
Further, the Tribunal exonerated ST of the alleged violations of Rule 8.4(c) and (d), as well as § 73-3-35, for his statement to the Chief that he was not taping their conversation. The Tribunal held that, otherwise, an attorney in the position of ST would have a distinct conflict of interest thrust upon him, requiring him to choose between his interests and those of his client. In addition to finding no violation of Rule 8.4(d), the Tribunal was of the opinion that if ST had failed to take the opportunity to preserve the truth in an attempt to exonerate his client, such failure itself could be construed as a violation of Rule 8.4(d), as conduct prejudicial to the administration of justice.
On April 25, 1990, the Tribunal entered a Judgment finding in favor of ST and dismissing the Formal Complaint. The Mississippi Bar appeals from this judgment of the Complaint Tribunal.

II.
This matter was presented to the Tribunal on stipulated facts. The entire record *231 consists of a recitation of that stipulation, the arguments of counsel, a transcription of the recorded conversation with the Chief and the affidavit of ST. The stipulated facts, modified to conceal identities, are as follows:
ST is a resident of XYZ County, Mississippi, and was at all times hereinafter mentioned a member of the Bar subject to the disciplinary jurisdiction of the Supreme Court of Mississippi and its designated agencies.
On or about January 3, 1988, the City Police Chief (Chief) came to the home of ST's client (Client) and questioned him about a statement given to the police by one T.J. after which Client went to the Police Station.
On January 4, 1988, the regular city Judge recused himself from the case though he signed a Warrant for Client's arrest on January 3, 1988.
On January 14, 1988, Client hired ST to represent him in a simple assault charge in City Court. ST claims he was not advised until the day of trial that the case was to be tried on that day  January 19 and that he never consented to the regular judge's recusing himself or to the appointment of an acting judge to hear the case, inasmuch as the appointment was, according to ST, a violation of state law which requires city officials and not the sitting judge to appoint a substitute judge. ST also claims that the neighboring City Prosecutor, who prosecuted the case against Client in city court, did so without authority.
During a recess after the prosecution rested its case against Client, the Judge told ST in the restroom that the prosecution had a problem proving its case. The Judge took the case under consideration. Ten days later, Judge found Client guilty. ST first learned of the conviction from the press, not the court. ST then called the Judge who told him that Chief and other city officials were "after" his client. They found him guilty of simple assault for his own good, that he could have been found guilty of serious felony charges such as rape or aggravated assault, and that he should not appeal.
ST then called Chief to verify what Judge had just told him and was told by Chief that six more witnesses were lined up to come forward against Client if he appealed the conviction and remained on the Board of Aldermen.
On February 4, 1988, Client filed a civil rights suit against the City and various city officials in the U.S. District Court for injunctive relief.
During the course of ST's representation of Client in federal court, the Defendants filed a Motion for Summary Judgment, in response to which ST filed an Affidavit stating that he recorded the three telephone conversations he had with the Judge and Chief. These tapes were made without their knowledge or consent.
During one of those telephone conversations, ST was asked by Chief, "You ain't taping me, are you?" ST replied "No, No," when in fact he was recording the conversation. (emphasis added)
ST's motivation in so acting is undisputed. He felt that his client was the victim of a political persecution as reflected in the allegations contained in his federal complaint. Immediately prior to making the tape recordings complained of here, ST learned from the press that his client had been convicted. According to ST, his surprise was transformed into suspicion after learning of his client's conviction primarily because the Judge expressed to ST (after taking the matter under advisement) that the prosecution had not made its case against his client. By his affidavit, ST alleges, without contradiction, that the acting judge, in an earlier year, had been discharged as city prosecutor, causing the acting judge some financial difficulty attributable to the loss of health insurance. This caused ST to suspect a motive of revenge against his client, a member of the city council which had discharged the judge.
Believing that his client's rights were being abused, ST telephoned the judge, at which time, ST alleges, it became apparent that it would be absolutely necessary to record the conversation in order to prove *232 the corruption and to prove his client's innocence. The same was true with the call to the Chief.
When the Chief confronted ST with the question as to whether their conversation was being recorded, ST testified that he knew he was about to hear the truth. He was sure that the Chief was preparing to make a statement which he would later deny. ST contends that he was faced with the choice of protecting his client's interest or risking potential violations of ethical practices. He further asserted in his brief that it was the Chief who "put [the client's] rights on the line by asking ST, `You ain't taping me, are you?'" Embodied in his response of, "No. No.," was ST's decision to protect his client's rights.

III.
ST contends that his response to the Chief was proper and justified, and moreover, that rights are not real if they cannot be enforced. ST also submits that his misrepresentation to the Chief does not rise to the level of professional misconduct and does not require disciplinary action. The Mississippi Bar does not request or propose any particular disciplinary action, but asserts simply that it was error for the Tribunal to completely exonerate ST, to dismiss the Formal Complaint with prejudice, and to refrain from imposing any discipline at all. We, of course, review this matter de novo as to both liability and sanctions. Mississippi State Bar v. Blackmon, 600 So.2d 166, 171 (Miss. 1992), quoting Foote v. Mississippi Bar Ass'n, 517 So.2d 561, 564 (Miss. 1987); Culpepper v. Mississippi State Bar, 588 So.2d 413, 415 (Miss. 1991); Mississippi State Bar v. Varnado, 557 So.2d 558, 559 (Miss. 1990) ("[t]his Court has the non-delegable duty of ultimately satisfying itself as to the facts, and reaching such conclusions and making such judgments as it considers appropriate and just").
The Bar asserts that ST's surreptitious taping of the telephone conversations was, in and of itself, unethical. See National Life & Accident Insurance Co. v. Miller, 484 So.2d 329 (Miss. 1985); Netterville v. Mississippi State Bar, 397 So.2d 878 (Miss. 1981); J.C. Penney Co., Inc. v. Blush, 356 So.2d 590 (Miss. 1978). However, in Attorney M v. Mississippi State Bar, 621 So.2d 220 (Miss. 1992), we held that, under certain circumstances, an attorney may tape a conversation with a potential party opponent without his knowledge or consent. In that case, Attorney M taped a series of conversations with a doctor who had a treated a patient who later became a plaintiff in a malpractice action against another physician. Although the doctor testified that he assumed the conversations were taped, he did not know until he received a letter so indicating from Attorney M.
In Attorney M, we revisited our opinion in Netterville, wherein we held "that surreptitious tape recording is not unethical when the act, `considered within the context of the circumstances then existing,' does not rise to the level of dishonesty, fraud, deceit or misrepresentation." 621 So.2d at 223, quoting Netterville, 397 So.2d at 883. In so ruling, we expressed our preference for a broader test than that espoused by Formal Op. 337, published by the ABA Committee on Ethics and Professional Responsibility in 1974. Id. Accordingly, we found in Attorney M that:
Under certain circumstances, for example, an attorney may be justified in making a surreptitious recording in order to protect himself or his client from the effects of future perjured testimony. On the other hand, an attorney who uses a secret recording for blackmail or to otherwise gain unfair advantage has clearly committed an unethical  if not  illegal act. Ethical complications arise not so much from surreptitious recordings per se as from the manner in which attorneys use them. The Netterville context-of-the-circumstances test contemplates this distinction; Formal Op. 337 does not.
621 So.2d at 224. Looking at the context of the circumstances, we are of the opinion that Attorney ST was acting to protect his client's interests in surreptitiously taping the telephone conversations with the judge and the police chief. Pursuant to our decision *233 in Attorney M, this action may well be justified and cannot be found unethical.
We find, however, that Attorney ST stepped over the line in violation of the Mississippi Rules of Professional Conduct when he blatantly denied, when asked, that he was taping the conversations. Rule 4.1 comment expressly states that "[a] lawyer is required to be truthful when dealing with others on a client's behalf." An attorney is not a private detective or a secret agent; he is not acting as an undercover police officer; rather, he is first and foremost an attorney, and his truthfulness must be above reproach. When asked point-blank whether he is mechanically reproducing a conversation, his answer must be truthful. To respond otherwise vitiates all rules of professional conduct.
Attorney ST's actions, therefore violate the very precepts of Rule 4.1. As the Rule states:
In the course of representing a client, a lawyer shall not knowingly:
a. make a false statement of material fact to a third person.
Attorney ST knew that he was making a false statement when he denied that he was taping the conversation. In our view, he misrepresented a material fact; that is, whether the conversations were being taped. An attorney is an advocate for his client, however, he cannot lie when asked if he is taping a conversation. He must answer truthfully.
In assessing the nature and extent of the sanctions to be imposed upon Attorney ST, we consider:
1. The nature of the misconduct involved;
2. The need to deter similar misconduct;
3. The preservation of the dignity and reputation of the profession;
4. The protection of the public; and
5. Sanctions imposed in similar cases.
Culpepper v. Mississippi State Bar, 588 So.2d 413, 420 (Miss. 1991); Attorney Q v. Mississippi State Bar, 587 So.2d 228, 234 (Miss. 1991); Fougerousse v. Miss. State Bar Ass'n, 563 So.2d 1363 (Miss. 1990). The ABA has approved further guidelines for courts to consider when imposing sanctions on attorneys. They include: (a) the duty violated, (b) the lawyer's mental state, (c) the actual or potential injury resulting from the misconduct, and (d) the existence of aggravating or mitigating factors. Mississippi State Bar v. Blackmon, 600 So.2d 166, 173 (Miss. 1992).
In Mississippi State Bar v. Attorney D, 579 So.2d 559 (Miss. 1991), we sanctioned an attorney who misrepresented to his client that a lawsuit had been filed. He was given a private reprimand because the candor and humility of the admission of his misconduct and untruthfulness served as mitigating factors. See also Attorney Q, 587 So.2d at 234 (private reprimand issued to attorney for ex parte communications with unrepresented party opponent).
Likewise, because Attorney ST's conduct was not premeditated or planned, but a spontaneous, albeit incorrect, judgment call intended to protect his client and uncover the truth, we find that a private reprimand is appropriate in this case. This does not mean, however, that under other circumstances, we would not hesitate to impose a harsher sanction.
Accordingly, the decision of the Complaint Tribunal is reversed and the Tribunal is ordered to issue a private reprimand to Attorney ST.
DECISION OF THE COMPLAINT TRIBUNAL IS REVERSED AND TRIBUNAL ORDERED TO ISSUE A PRIVATE REPRIMAND.
HAWKINS, C.J., and PITTMAN, ROBERTS and SMITH, JJ., concur.
BANKS, J., concurs with separate written opinion joined by SMITH, J.
SULLIVAN, J., concurs in part and dissents in part with separate written opinion joined by PRATHER, P.J.
DAN M. LEE, P.J., not participating.
BANKS, Justice, concurring:
I concur in the result reached by the majority, so long as it is intended that the same rules apply to all attorneys in criminal proceedings. It must be clearly understood *234 that prosecuting attorneys, as well as defense attorneys, engaged in surreptitious taping or eavesdropping, are obligated to disclose that fact, if asked by the other party to the conversation.
Some jurisdictions take the position that as long as a lawyer does not violate any provision of law regarding surreptitious taping there is no ethical violation. Arizona State Bar Op. 90-2; Kentucky Bar Association Op. E-279; Utah State Bar Op. 90. Others find deception in the practice and, consequently, an ethical violation regardless of whether any general legal prohibition exists. Alabama Bar Association Op. 84-22; Alaska Bar Association, Op. 83-2; Matter of Wetzel, 143 Ariz. 35, 691 P.2d 1063 (1984); People v. Wallin, 621 P.2d 330 (Colo. 1981); Dallas Bar Association Op. 1981-5; Hawaii Supreme Court Op. 30; New York Bar Association, Op. 328 An Anonymous Member of the South Carolina Bar, 283 S.C. 369, 322 S.E.2d 667 (1984). Still others find that surreptitious taping must be allowed in the context of criminal defense work because it is generally allowed to the prosecution. Minnesota Lawyers Professional Responsibility Board Op. 3; Tennessee Supreme Court Board of Professional Responsibility Op. 81-F-14.
Until our decision in Attorney M, we had been counted in a fourth category, that is, no surreptitious taping other than by prosecutors. This was a result of our expression of approval of Formal Op. 337 published by the American Bar Association Committee on Ethics and Professional Responsibility in J.C. Penney v. Blush, 356 So.2d 590 (Miss. 1978). In Attorney M, at bottom, we joined the first category, holding that no ethical violation occurs unless the taped conversation is used in an unethical manner. Attorney M v. The Mississippi Bar, 621 So.2d 220 (Miss. 1992). Here we take the position that it is not unethical to tape surreptitiously but that, if the victim is astute (cautious, suspicious, fearful) enough to ask, the fact of taping must be disclosed.
It is not difficult to anticipate some problems with this in the criminal context. In the original majority opinion we approved surreptitious taping in the criminal proceedings because of the peculiar nature of that setting and extended that approval to defense attorneys in the interest of equal protection. Attorney ST v. The Mississippi Bar, 90-BA-552, p. 2 (Miss. July 1, 1992). We understood that the failure to disclose a surreptitious listener, electronic or otherwise, could be considered deceitful. We balanced the interest of the public in criminal prosecutions against the interest of maintaining the highest standards of conduct for lawyers in favor of criminal prosecutions in this instance. It followed, in our view, that a lawyer operating in this context is allowed to continue the deception to the point of denying electronic monitoring in the face of a direct question. Today we reject that view. With the understanding that our rejection applies equally to prosecuting and defense attorneys, I acquiesce in the change. I recognize that our holding will have an impact, perhaps adverse, on criminal investigations. To the extent that it portends such an impact, perhaps the criminal litigation bar will put forth alternatives that better address the competing conflicts here involved.
SMITH, J., joins this opinion.
SULLIVAN, Justice, concurring in part and dissenting in part:
As I stated in my dissent in this case, I do not believe that surreptitious taping is an essential tool in the apprehension and prosecution of criminals and in my view, is not only deceitful but dishonest and should be illegal. I would amend Ethical Opinion 337 and not allow taping in the criminal context or in any other context. An absolute ban on surreptitious taping adequately speaks to all public concerns of all parties and should be put in place and rigorously enforced. To that extent, I do not join the majority opinion on Petition for Rehearing which would allow surreptitious taping in criminal cases.
I would sanction Attorney ST for lying but I would also sanction him for the surreptitious taping. If the majority opinion remains that surreptitious taping in the criminal context is not an ethical violation *235 in Mississippi, then I cannot join that position.
I join any opinion that finds lying by an attorney to be an ethical violation. Canons of Ethics are little more than professional rules for those without morals.
PRATHER, P.J., joins this opinion.
NOTES
[1] Rule 8.4 of the Mississippi Rules of Professional Conduct states in part:

It is professional misconduct for a lawyer to:
* * * * * *
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice; ... .
[2] Miss. Code Ann. § 73-3-35 (1972) states:

Every attorney and counselor at law, before he shall be permitted to practice, shall produce his license in each court where he intends to practice, and in the presence of such court, shall take the following oath or affirmation to wit:
"I do solemnly swear (or affirm) that I will demean myself, as an attorney and counselor of this court, according to the best of my learning and ability, and with all good fidelity as well to the court as to the client; that I will use no falsehood nor delay any person's cause for lucre or malice, and that I will support the constitution of the State of Mississippi so long as I continue a citizen thereof. So help me God."
And thereupon the name of such person, with the date of his admission, shall be entered in a roll or book to be kept in each court for that purpose.