649 So.2d 810 (1994)
Attorney L.S.
v.
The MISSISSIPPI BAR.
No. 92-BA-00507.
Supreme Court of Mississippi.
May 19, 1994.
Rehearing Denied February 23, 1995.
Stanford Young, Waynesboro, for appellant.
Charles J. Mikhail, Michael B. Martz, Jackson, for appellee.
EN BANC.
SMITH, Justice, for the Court:
This is an appeal taken from the April 28, 1992, Opinion and Judgment of the Mississippi Bar Complaint Tribunal finding attorney L.S. guilty of professional misconduct and suspending him from the practice of law for thirty (30) days.
Attorney L.S., after the conclusion of a lengthy medical malpractice case, contacted by telephone a juror and alternate juror and recorded the conversations. Prior to the jury verdict, Judge Frank Russell had read an order prohibiting the attorneys from contacting jurors without the court's permission. L.S. represented to the jurors that he had approval to talk to them when in fact he did not. L.S. contends that due to a hearing loss and fatigue from the trial he did not understand or comprehend the judge's order.
L.S. was found guilty of constructive contempt of court and this Court affirmed that decision and $250 fine.
The Complaint Tribunal found L.S. guilty of violating Mississippi Rules of Professional Conduct Rule 3.5(a) and (b) for having contacted the jurors post-verdict when the contact was prohibited by court order and without the court's permission. The Tribunal also found a violation of Rule 4.1(a) in making a false statement of a matter fact that he had permission to call the jurors. Finally, the Tribunal found a violation of Rule 8.4(a) *811 by tape recording without consent the telephone conversations. The Tribunal was of the opinion that a 30-day suspension was warranted.
On appeal, L.S. states the issues as follows:
I. WHETHER, L.S. VIOLATED RULE 3.5(a & b), WHICH PROVIDE THAT A LAWYER SHALL NOT SEEK TO INFLUENCE A JUDGE, JUROR, PROSPECTIVE JUROR OR OTHER OFFICIAL BY MEANS PROHIBITED BY LAW, OR COMMUNICATE EX PARTE WITH SUCH PERSON EXCEPT AS PERMITTED BY LAW.
II. WHETHER, L.S. VIOLATED RULE 4.1(a) WHICH PROVIDES THAT DURING THE COURSE OF REPRESENTING A CLIENT, A LAWYER SHALL NOT KNOWINGLY MAKE A FALSE STATEMENT OF MATERIAL FACTS OR LAW TO A THIRD PERSON.
III. WHETHER, L.S. VIOLATED RULE 8.4(a, c & d), WHICH PROVIDE THAT A LAWYER SHALL NOT VIOLATE A RULE OF PROFESSIONAL CONDUCT, ENGAGE IN CONDUCT INVOLVING DECEIT OR MISREPRESENTATION, OR ENGAGE IN ANY OTHER CONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE.
IV. WHETHER THE PENALTY IS APPROPRIATE.
Subsequent to the hearing before the tribunal, this Court decided Attorney M v. Mississippi Bar, 621 So.2d 220 (Miss. 1992), holding that surreptitious taping of telephone conversations did not violate the rule of professional conduct. Because the tribunal based the suspension in part on L.S.'s recording of the telephone conversations, clearly a lesser penalty is in order.
This Court has previously reviewed the question of whether L.S. violated the judge's order and found the evidence sufficient. Under the standards outlined in The Mississippi Bar v. Attorney ST, 621 So.2d 229 (Miss. 1993), and cases referenced therein, a private reprimand is an appropriate penalty.

FACTS
In a three week trial in Lee County Circuit Court, L.S. represented the plaintiff in Nichols v. Tubb, 609 So.2d 377 (Miss. 1992) on appeal. On Thursday, February 4, 1988, at the conclusion of the trial and prior to the jury verdict being announced, Judge Frank Russell read an order stating that no one was to discuss the case with any juror without the judge's consent.
On the Sunday after the trial, L.S. received a telephone call from Dr. William Gary, who had been a witness for the plaintiff. Dr. Gary had talked to alternate juror Mrs. Jean Denham, who was a longtime patient of his, about his concern over the verdict for the defendants. Mrs. Denham mentioned that she knew that the plaintiff was receiving $7,000 a month from workers' compensation. This information had not been presented as evidence to the jury.
After talking to Dr. Gary, L.S. attempted to reach the judge but he was unable. L.S. then contacted Mrs. Denham by telephone and recorded their conversation without her knowledge. Mrs. Denham refused to discuss the case with L.S.. In the course of the conversation, L.S. told Mrs. Denham that the judge "told me to check with some of the jurors." Mrs. Denham asked L.S. for the judge's telephone number and instead of giving the number L.S. told her he would put her in touch with the judge.
L.S. then called and talked to juror Chester Stasko and recorded the conversation without Stasko's knowledge. L.S. told Stasko that the judge "said that counsel would be permitted to call [the jurors]." Stasko told L.S. that he became aware of the workers' compensation payment only after the jury verdict.
On Monday morning, L.S. met with Judge Russell and told him what had happened. The judge showed L.S. a copy of his order, at which time L.S. read it and apologized to the judge for talking to the jurors without permission. L.S. told the judge that he had taped the conversations and later provided the tapes and transcripts of the tapes.
The State filed a petition for contempt against L.S. for violating the court's order. *812 L.S. was found guilty of constructive contempt in Lee County Circuit Court and this Court affirmed the conviction and $250 fine.
The formal bar complaint in this matter was filed on September 6, 1991, and the hearing before the complaint tribunal was conducted on April 3, 1992. Before the complaint tribunal, L.S. testified that he either did not fully hear or understand the judge's order due to a hearing loss and fatigue from the trial. L.S. attempted to present a 1972 report on his hearing from Dr. Shea, but it was never allowed in evidence. A 1987 audiogram report was allowed in the record for identification only.
Attorney William Randall testified on behalf of L.S.. Randall testified that L.S. has a hearing problem. Randall stated that he was in the courtroom when the verdict was returned in the Nichols case and that he did not hear the order read. Randall heard the judge make a statement but not this particular order. Randall testified, as did L.S., that this order was not the standard order given at the conclusion of trial. According to Randall, L.S. was surprised when Randall told him that he had heard this same order given in other cases.
Gregory Bates, a juror in the trial, also testified for L.S.. Bates testified that he did not remember an instruction from the judge. Bates further stated that he had heard that the plaintiff was receiving $7,000 a month discussed in the jury room.
The opinion and judgment of the tribunal were entered on April 28, 1992. The tribunal found clear and convincing evidence that L.S. had violated the Rules of Professional Conduct, Rules 3.5(a & b), 4.1(a), and Rule 8.4(c & d) and entered a judgment imposing a 30-day suspension.

DISCUSSION
In bar disciplinary matters, this Court examines the evidence de novo "on a case by case basis, sitting as triers of fact and no substantial evidence or manifest error rule shield the Tribunal from scrutiny." Attorney W.L. v. Mississippi Bar, 621 So.2d 235 (Miss. 1993) and cases cited therein. See Rule 9.4, Rules of Discipline for the Mississippi State Bar.
The burden is on the Bar to show by clear and convincing evidence that an attorney's actions constitute professional misconduct. Attorney W.L., 621 So.2d at 237; Attorney Q. v. Mississippi State Bar, 587 So.2d 228, 232 (Miss. 1991).

I. WHETHER L.S. VIOLATED RULE 3.5(A & B).
Rule 3.5(a & b) Rules of Professional Conduct provides:
A lawyer shall not:
(a) seek to influence a judge, juror, prospective juror or other official by means prohibited by law;
(b) communicate ex parte with such person except as permitted by law.
L.S. argues that the evidence is not clear that he violated Rule 3.5(a & b) since no judge was influenced and no juror was contacted prior to the jury being discharged. Therefore, he argues that his conduct could not have influenced the outcome of the case. The Bar's response is that "Mr. L.S. sought to influence a juror, not a judge, by means prohibited by law (Judge Russell's Order) in violation of Rule 3.5(a), and communicated ex parte with jurors by means not permitted by law (again, Judge Russell's Order), in violation of Rule 3.5(b)." The Bar also contends that L.S.'s argument that since the jury had been discharged and Denham and Stasko were not jurors "begs the question, and the Bar will not devote any time to such argument." Actually, the Bar fails to devote much time at all to arguing any part of a violation of Rule 3.5.
In reference to part (a) of Rule 3.5, the record does not show that L.S.'s purpose in contacting Denham and Stasko was to influence either of them. The trial had been concluded at that point and the transcripts and the testimony show that L.S. was contacting these former jury members for information as to whether the jury had received information about a $7,000 per month payment to the plaintiff, information which was not part of the evidence in the case. Mrs. Stasko was an alternate juror and did not *813 even participate in the decision of the jury. It is unclear what influence L.S. could have exerted over either Denham or Stasko. At most, it appears that L.S. was simply attempting to uncover juror misconduct thoroughly representing his client. L.S. was practically in a catch 22 situation. The opinion expressed by the Tribunal does not indicate any finding of attempt to exert influence.
The Bar, which has the burden of proof, has not argued any facts which support a violation of Rule 3.5(a).
The violation of Rule 3.5(b) is clearly established. L.S. testified that he did contact the jurors, which was in violation of the order of Judge Russell. The question of whether L.S. heard or understood the order is disputed, and the Tribunal found against L.S. on this question. Also, this Court has considered the same question in the context of L.S.'s appeal of the contempt proceedings and affirmed the decision. The transcripts of the telephone conversations is inconclusive on whether L.S. knew that what he was doing was not sanctioned by the court. The findings of the Tribunal of a violation of Rule 3.5(b) can be supported by the evidence.
While there was a violation of Rule 3.5(b), the evidence presented by L.S. can be considered in mitigation of any proposed punishment. L.S. did present evidence that he had a hearing problem through his own testimony and that of William Randall. Also, given the timing of the order at the conclusion of a long trial and in the heightened atmosphere of anticipation of the jury verdict, it is not inconceivable that L.S. may not have been paying full attention to the judge's instruction. L.S. attempted several times to contact the judge prior to talking to the jurors. When confronted by the judge, L.S. apologized and fully cooperated by providing all the evidence which was later used against him.
The findings of the Tribunal as to a violation of Rule 3.5 can be supported as to part (b). L.S.'s argument on part (a) has merit and this Court should reverse the Tribunal on that finding.

II. WHETHER L.S. VIOLATED RULE 4.1(A).
Rule 4.1 Rules of Professional Conduct, provides, in part as follows:
In the course of representing a client a lawyer shall not knowingly:
(a) make a false statement of material fact or law to a third person.
This violation is premised on the false representation to Denham and Stasko that L.S. had permission to speak to them. The transcripts of the telephone conversations show that L.S. did misrepresent his authority. Even apart from the question of whether L.S. heard and appreciated the judge's order, the statements to these jurors would not be true. L.S. told Denham that "[the judge] told me to check with some of the jurors." L.S. told Stasko that "[the judge] said that counsel would be permitted to call." Neither of these statements has any factual basis even if the order did not exist.
There is evidence that supports a violation of Rule 4.1.

III. WHETHER L.S. VIOLATED RULE 8.4(a, c & d).
Rule 8.4, Rules of Professional Conduct, states as follows in part:
It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the act of another;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice.
Although the Bar attempts to weave this Rule into the conduct of making the false statements to the jurors, the decision of the Tribunal shows that this violation relates to the recording of the telephone conversations. As stated in the transcript:
Finally, the Tribunal is of the opinion by clear and convincing evidence that Mr. L.S. violated Rule 8.4(A), subparagraph (c) and subparagraph (d) by tape recording without prior consent or permission phone conversations that he initiated and had *814 with these two same jurors and by engaging in conduct involving deceit, misrepresentation, and conduct prejudicial to the administration of justice, as that relates to his disobedience of the court order of February 4th, 1988, entered by Judge Russell, when he initiated contact with the two jurors.
As noted by the Bar, this Court has held in Attorney M v. Mississippi Bar, 621 So.2d 220 (Miss. 1992), that surreptitious taping of telephone conversations do not violate the rules of professional conduct. Thus, the major component of the Tribunal's finding under Rule 8.4 no longer exists as a violation. The remaining part of the Tribunal's opinion merely repeats the finding of misrepresentation in the telephone conversation and disobedience of the judge's order found under other rules. The finding of a violation of this rule in this case does not seem to add anything to the Tribunal's opinion.
As it is written, there will always be a violation of Rule 8.4 if there is a violation of any other rule. No new or different conduct supports this violation. L.S. can still be said to have violated Rule 8.4(a, c & d) but without the surreptitious recording violation this finding has diminished significance.

IV. WHETHER THE PENALTY IS APPROPRIATE
"This Court has independent authority to reassess the punishment imposed in the Bar disciplinary proceedings and modify the punishment as it deems proper." Goeldner v. Mississippi State Bar, 525 So.2d 403, 407 (Miss. 1988).
The Bar's position is that "the only real issue on appeal is the appropriateness of the discipline imposed by the Tribunal, a thirty (30)-day suspension." The Bar then goes on to take the untenable position that the sanction is "too lenient." In light of this Court's decision in Attorney M which eliminated part of the Tribunal's basis for the penalty imposed, the position taken by the Bar cannot be justified.
The Bar cites numerous cases in which greater sanctions have been imposed for attorney misconduct, but none of these cases even remotely resembles the present case. This is not a case involving misappropriation of funds (Haimes v. The Mississippi Bar, 601 So.2d 851 (Miss. 1992) and Reid v. Mississippi State Bar, 586 So.2d 786 (Miss. 1991)), deliberately misrepresenting attorney's fees (Goeldner v. Mississippi State Bar), defrauding family members (Brumfield v. Mississippi State Bar, 497 So.2d 800 (Miss. 1986)), misrepresenting law school credential and admission to another state bar in applying for employment (Barfield v. Mississippi State Bar, 547 So.2d 46 (Miss. 1989)), or misrepresenting terms of a settlement (Culpepper v. Mississippi State Bar, 588 So.2d 413 (Miss. 1991)). L.S.'s conduct did not involve any monetary loss or other specific harm to anyone involved.
The Bar further errs in comparing this present case to Mississippi Bar v. Mathis, 620 So.2d 1213 (Miss. 1993), and Underwood v. Mississippi Bar, 618 So.2d 64 (Miss. 1993). Mathis was suspended for one year for misrepresenting to the court and opposing counsel that no autopsy had been performed in a civil case. Mathis' deceit involving knowing misrepresentations to the court and to counsel opposite can hardly be compared to L.S.'s. Similarly, Underwoods' lying to his clients about the terms of a settlement and the existence of a settlement to the other parties is a disingenuous comparison by the Bar to the case sub judice. L.S.'s conduct did not involve misrepresentation to the court or to parties involved in a case likely to be harmed by the misrepresentation.
The present case falls most nearly within the rationale of Mississippi Bar v. Attorney ST, 621 So.2d 229 (Miss. 1993), wherein this Court stated:
In assessing the nature of the sanctions to be imposed upon Attorney ST, we consider:
1. The nature of the misconduct involved;
2. The need to deter similar misconduct;
3. The preservation of the dignity and reputation of the profession;
4. The protection of the public; and
5. Sanctions imposed in similar cases. *815 The ABA has approved further guideline for courts to consider when imposing sanctions on attorneys. They include: (a) the duty violated, (b) the lawyer's mental state, (c) the actual or potential injury resulting from the misconduct, and the existence of aggravating or mitigating factors.
Id. at 233.
The Court imposed a private reprimand on Attorney ST for misrepresenting that a telephone conversation was not being taped when in fact the conversation was being taped. The Court stated that a private reprimand was appropriate "because Attorney St's conduct was not premeditated or planned, but a spontaneous, albeit incorrect, judgment call intended to protect his client and uncover the truth." Id. Also cited in Attorney ST is Mississippi Bar v. Attorney D, 579 So.2d 559 (Miss. 1991), where an attorney misrepresented to his client that a lawsuit had been filed. This Court gave a private reprimand because of the attorney's candor and humility in admitting misconduct were mitigating factors. In Attorney Q v. Mississippi State Bar, 587 So.2d 228 (Miss. 1991), a private reprimand was given for ex parte communications with an unrepresented party opponent.
L.S.'s conduct, which is similar to ST's, can be construed as a bad judgment call intended to protect his client and uncover jury misconduct. L.S.'s hearing loss and fatigue possibly contributed to a misunderstanding of the judge's instructions. L.S. made an attempt to contact the judge prior to talking to the jurors and when confronted by the judge, L.S. apologized and turned over the tapes of the conversations. Under our recent cases, the appropriate penalty for L.S. would be a private reprimand.

CONCLUSION
The Bar sufficiently showed that L.S. did disobey an order of the court in contacting jurors after the conclusion of trial and that he misrepresented that he had the permission of the judge to speak to them. This Court has since the conclusion of the tribunal hearing removed surreptitious taping of telephone conversations from the category of attorney misconduct and that portion of the Tribunal's opinion is no longer applicable. The evidence of attempting to influence a juror is lacking in this case because the jury verdict had already been rendered in open court. There was no juror to influence. L.S.'s bad judgment was intended to protect his client's interest and uncover jury misconduct regarding information discussed in the jury room that was not admitted as evidence. Also several factors in mitigation weigh favorably on behalf of L.S..
Based on cases recently decided by this Court, an appropriate sanction for L.S.'s conduct would be private reprimand. This Court orders that Attorney L.S. be given a private reprimand.
DECISION OF THE COMPLAINT TRIBUNAL FOR SUSPENSION IS REVERSED AND ATTORNEY L.S. IS HEREBY PRIVATELY REPRIMANDED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, McRAE and JAMES L. ROBERTS, Jr., JJ., concur.